IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SEDERIS FIELDS,**

        **Plaintiff,**

v.                                        Civil Action No. 06-0538(HHK)

**ED SCHAFER , Secretary,**
    **U.S. Department of Agriculture**

        **Defendant.**

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, Defendant United States Department of Agriculture moves the Court for summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.  In support, Defendant submits a Statement of Material Facts Not in Dispute, a Memorandum of Points and Authorities,  accompanying documents, and a proposed order.

                                              Respectfully submitted,

                                              /s/_____
                                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                                              United States Attorney

                                              /s/_____
                                              RUDOLPH CONTRERAS, D.C. BAR # 434122
                                              Assistant United States Attorney

                                              /s/_____
                                              BLANCHE L. BRUCE, D.C. BAR # 960245
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W., Room E-4220
                                              Washington, D.C. 20530
                                              (202) 307-6078

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SEDERIS FIELDS,**

      Plaintiff,

  v.                                 Civil Action No. 06-0538(HHK)

**ED SCHAFER , Secretary,**[1]
    **U.S. Department of Agriculture**

      Defendant.

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE ISSUE

_____Pursuant to LCvR 7.1(h), Defendant United States Department of Agriculture (USDA) submits this statement of material facts as to which there is no genuine dispute.

1. Plaintiff is an African-American female (Attachment I - Fields Affidavit  p. 11[2]).

2. Since January 1999, Plaintiff has been employed with Defendant Farm Services Agency (FSA) as a GS-301-13 Program Coordination Specialist in the office of the Deputy Administrator for Field Operations (DAFO) (Attachment I - Fields Affidavit p. 11).

3. In July 2003, Douglas Frago, the DAFO, a Caucasian male, was Plaintiff's first-line supervisor and John Chott, a Caucasian male, the Assistant to the DAFO, was Plaintiff's second-line supervisor. ((Attachment J - Frago Interview Statement p. 97; Attachment K - Chott Affidavit p. 88).

4. Defendant advertised two (2) vacant GS-301-14 DAFO Administrative Management Specialist (AMS) positions under vacancy announcement number UF168394CT.  The time

---

[1]    The substitution of Ed Schafer, the new secretary of the Department of Agriculture, may be done without a court order.  See Fed.R.Civ.P.25(d)(1).

[2]    "P." refers to the page number at the bottom of the attachment.

period to submit applications for the positions was February 24, 2003 to March 17, 2003 (Attachment A- Vacancy Announcement p. 1).

5.      The major duties for the two AMS positions were 1) provide instruction and policy guidance to state and county Farm Services Agency offices regarding budget, workload analysis, reporting, personnel, fiscal management, and administrative services, with respect to administrative and management issues; 2) participate in the development, implementation, and evaluation of policies and programs that pertain to the operation and management of state and county Farm Services Agency offices nationwide; and 3) represent the Deputy Administrator for Field Operations in meetings with top agency and departmental officials on matters relating to state and county office management, operating policies, and overall program delivery (Id. at 2.)

6.      Carolyn Taylor, the Human Resources Specialist, a Caucasian female was responsible for issuing the vacancy announcement, processing applications, making eligibility determinations, and compiling a best qualified list for the AMS positions (Attachment L - Taylor Affidavit pp. 68-69).

7.      Douglas Frago was the selecting official for the two AMS positions (Attachment J - Frago Interview Statement p. 98).

8.      Plaintiff submitted her AMS application on March 17, 2003 (Attachment M - Fields Application).

9.      Twenty-three (23) competitive applicants were found qualified for the AMS positions, and thirteen (13) of the twenty-three applicants were referred to the selecting official. (Attachment L - Taylor affidavit p. 69).

10      Plaintiff, Ken Nagel (a Caucasian male), and Pat Spalding (a Caucasian male) were

among the thirteen applicants referred to the selecting official (Attachment N - Fields Referral application p. 157; Attachment B - Nagel Referral application p.1; Attachment C - Spalding Referral application p.1)

11.     Ken Nagel had twelve (12) years of experience working for the USDA as a) an Agricultural Program Specialist; b) a County Executive Director for three counties; and, c) a County Office Trainee.  Nagel also had four (4) years of agricultural loan banking experience and nineteen (19) years of farming experience. (Attachment B - Nagel Referral application pp. 5-11).

12.     Nagel received a) a Bachelor of Science degree from the University of Nebraska in 1971; b) a Real Estate Sales License from the Nebraska School of Real Estate in 1983: c) an Instructor Certificate for the Nebraska Farm and Ranch Business Management Program at Southeast Community College in 1989; and d) graduate and undergraduate credit from the University of Nebraska Graduate College of Business Administration between 1988 and 1990  (Id. at 11.).

13.     Pat Spalding had twenty (20) years of experience working for the USDA as a) an Agriculture Loan Specialist; b)  a Contract Specialist; c) an Administrative Officer; 4) an Administrative Officer Trainee; d) an Agricultural Management Specialist; e)  County Supervisor; and, f)  an Assistant County Supervisor  (Attachment C - Spalding Referral application pp. 5-10; Attachment D - Spalding Deposition p. 11, ln. 14; p. 12, ln. 19).

14.     Spalding received a Bachelor of Science degree from Purdue University in 1982. (Attachment C - Spalding Referral application p. 11.)

15.     Plaintiff had approximately twenty-two (22) years of experience working for the USDA as a) a Program Coordination Specialist for four (4) years; b) an Equal Employment Specialist for eight (8) years; c) an Equal Employment Assistant for three (3) years; and d) a Secretary for

3

seven (7) years. (Attachment N - Fields Referral application pp. 160-162; Attachment E - Fields February 22, 2007, deposition p. 15, ln. 21 – p. 20, ln. 13). Plaintiff also had approximately five (5) years of secretarial experience prior to her employment at the USDA. (Attachment E - Fields February 22, 2007, deposition p. 13, ln. 5 – p. 15, ln. 22). Plaintiff does not have a farming or agricultural background (Attachment F - Fields deposition August 29, 2007 p. 73, ln. 21 - p. 74, ln. 7).

16. Plaintiff's application indicates that she received a) a Federal Workplace Mediation Certificate from George Mason University: and b) a Bachelor of Science degree from Howard University. (Attachment N - Fields Referral application p.162). However, Plaintiff did not receive a Bachelor of Science degree from Howard University[3] (Attachment E - Fields February 22, 2007 deposition p. 13, lns. 3-4; p.104, lns. 2-4).

16. Plaintiff's first-round interview occurred on July 8, 2003. (Attachment I - Fields affidavit p. 12).

17. Douglas Frago, John Chott, and Salomon Ramirez (a Hispanic male serving as Assistant to the Deputy Administrator for Farm Programs) were the interview panel members for the first interview (Attachment I - Fields Affidavit p. 12). An EEO observer was also present during the first-round of interviews (Id.; Attachment L - Taylor affidavit p. 69). The observer attended based upon the advice of Taylor (Attachment L - Taylor affidavit p. 69).

19. The panel members individually scored each applicant during the interviews based upon

---

[3] When being deposed, Plaintiff stated that she had received 1) an Associate degree from Prince George's Community College, 2) undergraduate credit from the University of Maryland, 3) *undergraduate credit from Howard University*, and 4) a Federal Workplace Mediation Certificate from George Mason University. Transcript of Plaintiff's Deposition dated February 22, 2007 (Attachment E), p. 8, ln. 18 – p. 13, ln. 4.

responses to a standard set of questions.[4]  (Attachment O - Ramirez Affidavit p. 75).  The interviewers averaged the scores after the interviews and then ranked each applicant either high or medium *(Attachment O - Ramirez Affidavit p. 75; Attachment J - Frago Interview Statement p. 98; Attachment - P First round score sheet pp.  464-465).  Scores were based on each applicant's application and responses during the interview  (Attachment O - Ramirez' Affidavit p. 75).

20.     The five (5) high-ranking applicants were invited back for a second round of interviews (Attachment J - Frago Interview Statement p. 98; Attachment P - First round score sheet).

21.      Plaintiff, Ken Nagel, and Pat Spalding were three (3) of the five (5) applicants who were scheduled a second interview.  (Attachment I - Fields Affidavit p. 13).

---

[4]     The questions in the first-round interview were as follows:
1) Please tell us about yourself.  What do you do in your current job?  How does your current job relate to the job you are seeking?
2) How flexible is your work schedule?  Are you available to travel?
3) If I were to talk to your present and previous supervisors, what would they likely say about you?
4) Of all the jobs you held, which have been the most rewarding and why?  Have there been any jobs you did not like?
5) Why do you want this position?
6) What are your strengths and weaknesses as an employee?
7) Describe your oral and written communication skills and experiences, including any public speaking experience.
8) How do you handle pressure to meet deadlines?  How do you maintain your normal duties in that situation?
9) What would you do if you were given a deadline you could not meet?
10)     In this position, you will have to deal with administrative matters.  In what administrative areas do you have experience?
11)     What would you do if you were Acting Deputy Director and you heard one employee make unkind, sexual remarks to an employee of the opposite sex?
12)     How do you handle difficult coworkers or subordinates?
13)     Do you have any other comments or questions?

(Attachment V- Fields Interview Sheet pp. 417-419).

22. Prior to the second round of interviews, Douglas Frago hired Linda Treese, a Caucasian female, as the Assistant to the Deputy Administrator (ADA), pursuant to a wholly separate interview process (Attachment J - Frago Interview Statement p. 98). As ADA Linda Treese would supervise the two individuals hired for the AMS positions (Attachment K - Chott Affidavit p. 89).

23. Douglas Frago, John Chott, and Linda Treese were the panel members for the second round of interviews (Attachment I - Fields Affidavit p. 12).

24. Per the advice of Carolyn Taylor, an EEO observer did not attend the second round of interviews. (Attachment L - Taylor Affidivat p. 69; Attachment R - Taylor e-mail). Non supervisory positions which included the AMS positions did not require an EEO observer at all interviews. (Attachment S - Personnel Operations - Amendment 8 p. 66o; Attachment A - Vacancy Announcement) unlike supervisory positions (Attachment Q - Merit Promotion Process 10/30/02 pp 30-31).

25. Plaintiff's second-round interview occurred on July 21, 2003. (Attachment I - Fields Affidavit p. 12).

26. Once again, the panel members individually scored each applicant during the interviews, which consisted of a standard set of questions[5] (Attachment U - Treese Interview Statement p.

---

[5] The questions in the second-round interview were as follows:
1) We are interested in your strengths as an employee. What knowledge, skills, and abilities do you bring to this position?
2) We are interested in your accomplishments. Describe two or three of your accomplishments.
3) Describe your ability to work as a member of a team. What do you believe makes a successful team?
4) Tell me about a major problem you recently handled. What were the issues? Did you successfully resolve the problem? Be specific.

(Attachment W - Fields Interview Questions)

81).  The interviewers averaged the scores after the interviews and then ranked the applicants.  Id.
Scores were based on each applicant's resume and interview responses.  (Attachment J- Frago
Interview Statement p. 100).

27.    Panel members listed the scores and rankings in charts.  (Attachment T - Second round
score sheet pp. 484-486; Attachment G -Second Round Interview Charts).  The scores were as
follows:

      Ken Nagel, 13.25

      Patrick Spalding, 11.375

      [other applicant], 9

      Plaintiff, 8.5

      [other applicant], 8.375

      Id. [6]

28.    Plaintiff ranked fourth out of the five applicants in the second round of interviews.
(Attachment K - Chott Affidavit  p. 89; Attachment G - Second Round Interview Charts).
Plaintiff was not selected for an AMS position. (Attachment K Chott Affidavit p. 88).

29.    Ken Nagel and Pat Spalding, the two highest-ranking applicants after the second
interviews, were selected by Frago to fill the two AMS positions ( Id.; Attachment J - Frago's
Interview Statement p. 98).

30.    The interviewers agreed that Plaintiff did not interview well, did not perform better than

---

[6]    These averages are based on the individual scores in the charts prepared by the second-round panel members.  These averages do not reflect the panel members' final calculations, which are written in the right margin of each chart and involve rounding of decimals.

the selectees, and was not better qualified than the selectees. Plaintiff appeared nervous, lacked composure, and gave substandard responses to the interview questions. (Attachment S - Treese Interview Statement p. 81; Attachment K - Chott affidavit p. 89; Attachment J - Frago interview statement p. 101.)

31. Interviewers also agreed that Plaintiff's experience was primarily limited to the EEO and Civil Rights areas, compared to Nagel and Spalding whose experience included budgeting, personnel and farm loan experience. (Attachment S- Treese Interview Statement pp. 82-83; Attachment K - Chott Affidavit p. 90; Attachment J - Frago Interview Statement pp. 101-102).

33. Plaintiff exhausted her administrative remedies and filed a civil action in the instant case on March 22, 2006 (Attachment H - EEOC decision; Complaint).

                                              Respectfully submitted,

                                              /s/_____
                                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                                              United States Attorney

                                              /s/_____
                                              RUDOLPH CONTRERAS, D.C. BAR # 434122
                                              Assistant United States Attorney

                                              /s/_____
                                              BLANCHE L. BRUCE, D.C. BAR # 960245
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W., Room E-4220
                                              Washington, D.C. 20530
                                              (202) 307-6078

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SEDERIS FIELDS,**

        **Plaintiff,**

v.                                           Civil Action No. 06-0538(HHK)

**ED SCHAFER , Secretary,**
       U.S. Department of Agriculture

        **Defendant.**

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for a summary judgment. Plaintiff claims that her race (African-American) and sex (female) were the reasons she was not selected for an Administrative Management Specialist position. Plaintiff is incorrect. Defendant had legitimate, non-discriminatory reasons for selecting another candidate, and those reasons were not a pretext, thus, a summary judgment should be granted for Defendant.

### FACTUAL BACKGROUND

Defendant adopts its Statement of Material Facts not in Genuine Dispute.

### ARGUMENT

**I.   Legal Standards**

    A.   **Summary Judgment**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party, in determining whether there exists a genuine issue of material fact  Anderson, 477 U.S. at 255.  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.  The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact.  Id. at 247-48.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts,"  Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions,""or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  See also Brown v. Small, 2006 WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW).

  B  **Race and Sex Discrimination Claims**

In Fogg v. Gonzales, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, inter alia, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part"

2

or was a "substantial factor" in the employment decision. Id. at 451. Under either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence[1] and may rely on direct or circumstantial evidence to meet that burden. Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Plaintiff may attempt to establish that he was the victim of intentional discrimination on the basis of his race by relying on circumstantial evidence analyzed using the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] Under that scheme, the plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action. See McDonnell Douglas, 411 U.S. at 802. Once it is established that both parties have met their respective burdens of production (i.e., plaintiff by presenting a prima facie case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant. Hicks, 509 U.S. at 510. Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

---

[1] "Preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so. Hopkins v. Price Waterhouse, 737 F. Supp. 1202 (D.D.C. 1990), aff'd 920 F.2d 967 (D.C. Cir. 1990); Metropolitan Stevedore Company v. Rambo, 521 U.S. 121, 137 n.9 (1997). "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose." Id.

[2] Reliance on the McDonnell Douglas scheme for testing the viability of plaintiff's circumstantial evidence is not limited to the "single-motive" theory of liability. See Fogg v. Gonzales, 492 F.3d 447, 451 n.*

Alternatively, plaintiff can meet the ultimate burden by demonstrating that the defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but for" reason for the challenged employment action. St. Mary's Honor Center, 509 U.S. at 515-518. This is a more difficult standard than the requirement under Section 2000e-2(m) to show that discrimination was a motivating factor. In the single motive case Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Whichever standard is employed, plaintiff fails to meet his burden of coming forward with evidence to create a triable issue. As demonstrated below, the undisputed facts illustrate that plaintiff can not establish that discrimination was a motivating factor, much less that it was the sole motivating factor in the challenged decision.

"In order to state a prima facie case of discrimination of non-selection under Title VII, plaintiff must show that 1) she is a member of the a protected class; 2) she applied for and was qualified for an available position; 3) despite her qualifications she was rejected; and 4) either someone filled the position or the position remained vacant and the employer continued to seek applicants." Hammond v. Chao, 383 F. Supp.2d 47, 56 (D.D.C. 2005)(citing McDonnell Douglas,

4

411 U.S. at 802; Waters v. Gonzales, 374 F.Supp.2d 187, 193 (D.D.C. 2005).

II.   **Discussion**

Plaintiff established a prima facie case of discrimination. Plaintiff is an African-American female, a member of two protected classes. Plaintiff applied for, and was rated qualified for, the position of Administrative Management Specialist. Defendant selected two Caucasian males for the two vacant announcements (Statement of Facts ¶¶ 1, 8, 9, 28, 29).

Race and gender, however, were not factors in the non-selection. Defendant had legitimate and nondiscriminatory reasons for selecting other persons for the AMS positions because one, the selectees had a broad range of experience which included administrative experience; and, two, the selectees performed well during the interviews (i.e., they were better qualified than plaintiff). The AMS duties included "budgeting, budget analysis, staffing, hiring issues, county committee issues, furniture contracting, leasing of the county offices, a lot of miscellaneous issues, political activity with the Hatch Act, some EEO activity, appeals/grievances by employees, travel issues, congressional contacts, writing regulations, and writing positions papers" (Attachment K- Chott affidavit p. 90; Attachment J- Frago Interview Statement; Attachment A - Vacancy Announcement). The selecting official was seeking someone "who had broad experience in administrative area" (Attachment J - Frago Interview Statement p. 100).

Nagel had experience in procurement, leasing, personnel, farm loans, farming, banking public speaking and writing, and he had previously worked as county director. In addition, all the panel members agreed that during the interview Nagel presented himself as articulate, calm, responded well to questions (Attachment K - Chott Affidavit p. 91; Attachment L - Frago Interview Statement p. 102; Attachment U - Treese Interview Statement p. 82). Likewise, Spalding had

experience in leasing, contracting and consolidating offices, experience in personnel such as hiring people, handling grievances, and employee discipline, and he worked on a high profile case loan. Spalding had also been an Assistant Administrative Officer. Spalding had a good interview by presenting "a big picture perspective"because of his farm loan experience which was considered an asset (Attachment K - Chott Affidavit p. 91; Attachment J - Frago Interview Statement p. 102; Attachment U - Treese Interview Statement p. 82-83).

In comparison, Plaintiff's experience was very limited and focused in the EEO and Civil Rights areas. Plaintiff held clerical positions for many years and moved upward at USDA on the civil rights side, however, she did not have administrative, farming or agricultural experience, unlike the two selectees (Attachment F - Plaintiff deposition 8/29/07 p. 73, ln 21; p. 74, ln. 7). In addition, her second interview and many of her responses were poor[3] (Attachment K - Chott Affidavit p. 90-91; Attachment J - Frago Interview Statement pp. 101-102; Attachment U - Treese Interview Statement p. 82-83).

In rebuttal, Plaintiff claims that she was not selected because "I have a GS-13, and I'm doing almost the same things as required as a GS-14. I'm working in that area and I was the only minority and only 301 that applied for that position. . . . Also I rated the same as two white males and at that point an affirmative decision should have been made" (Attachment E- Fields' deposition 2/22/07 at 69). Plaintiff further added that "if you look at the pattern, the pattern is that whenever a selection is made it's always Caucasian even though minority is on , on the cert."(Id. p. 71). Plaintiff has also

---

[3] The interviewers remembered Plaintiff was asked to state a major accomplishment and Plaintiff responded it was organizing the Administrator's Christmas Party (Attachment J - Frago Interview Statement p. 101; Attachment K - Chott Affidavit p.90-91; Attachment U - Treese Interview Statement p.81).

6

indicated that gender was a basis for discrimination "because they hired two males" (Id. p. 71).

Even if a plaintiff could show superior qualifications to the person selected, "the D.C. Circuit has recognized that courts 'may not "second-guess" an employer's personnel decision absent demonstrably discriminatory motive.'" Woodruff v. DiMario, 164 F. Supp 2d 1, 16 (D.D.C. 2001) (internal citations omitted), aff'd, No. 01-5321, 2002 WL 449776 (D.C. Cir. Feb 21, 2002); Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Furthermore, "Title 7 . . . does not authorize a federal court to become 'a superpersonnel department that reexamines an entity's business decisions'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999).

The U.S. Supreme Court recently cited with approval this Circuit's standard that superior qualifications may be probative of pretext if "a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job." Ash v. Tyson Foods, Inc., 163 L.Ed. 2d 1053, 1058 (2006) (emphasis supplied) (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)). The Supreme Court also cited with approval the Eleventh Circuit's standard for pretext that "disparities in qualifications must be of such weight and significance *that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff* for the job in question." Id. (emphasis supplied) (citing Cooper v. Southern Company, 390 F.3d 695 (11th Cir. 2004)). The Court also cited a Ninth Circuit formulation of the standard, which permits an inference of pretext where the

7

plaintiff's qualifications are "clearly superior" to those of the individual selected. Id. (citing Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003[4]). Under any of these formulations of the standard, no such disparity exists in this case because the evidence supports that Defendant selected the two better qualified individuals because of their broad range of experience which included administrative skills as opposed to Plaintiff's limited background in the areas of EEO and Civil Rights.

     Other than her personal opinions and beliefs, Plaintiff has not provided any evidence to demonstrate to this Court that Defendant's selections were a pretext for discriminatory reasons. Nagel and Spalding had administrative experience which Plaintiff did not and both Nagel and Spalding did well in the interviews.  "A Plaintiff cannot satisfy her burden of demonstrating pretext 'simply based on [her] own subjective assessment of [her] own performance.'" Waterhouse v. District of Columbia, 124 F.Supp.2d 1, 7(D.D.C. 2000), aff'd, 298 F.3d 989 (D.C. Cir. 2002)(citing Smith v. Chamber of Commerce of the United States, 645 F.Supp. 604, 608 (D.D.C. 1986)).  A plaintiff has the duty to put forth evidence of discrimination, not 'quibble about the candidates' relative qualifications." Vasilevsky v. Reno, 31 F. Supp 2d 143, 150 (D.D.C. 1998)).  In the absence of any other evidence that would allow a jury to infer that discrimination took place, 'slight questions of comparative qualifications do not warrant a jury trial." Walker v. Dalton, 94 F. Supp.2d 8, 16 (D.D.C. 2000).   In sum, Plaintiff has not shown that Defendant's decision to hire the two highest ranked candidates was motivated by racial and gender discrimination.

---

[4]    Opinion amended on rehearing, No. 00-35999,  2003 WL 21027351 (9th Cir. May 08, 2003)

8

**Conclusion**

For the above stated reasons, summary judgment should be granted for Defendant.

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney


Of Counsel
Dionne Sethna
Brandi A. Cain
U.S. Department of Agriculture