# ATTACHMENT D

Patrick Spalding

Page 1

1

2              UNITED STATES DISTRICT COURT FOR THE

3                    DISTRICT OF COLUMBIA

4                       CIVIL DIVISION

5    SEDERIS FIELDS                )

6       Plaintiff                  )

7            vs.                   )  Civil Action No.

8    MIKE JOHANNS, SECRETARY,  )  06-0538(HHK)

9    U.S. DEPARTMENT OF            )

10   AGRICULTURE                   )

11      Defendant                  )

12

13

14

15          Deposition of Patrick J. Spalding

16                   Washington, D.C.

17                   March 12, 2007

18

19

20

21   Reported by:  Bonnie L. Russo

22   JOB NO. 179873B

Page 2

```
 1
 2
 3
 4
 5          March 12, 2007
 6          12:05 p.m.
 7
 8
 9   Deposition of Patrick J. Spalding held at:
10
11       Law Offices of David A. Branch
12       1825 Connecticut Avenue, N.W.
13       Suite 690
14       Washington, D.C. 20009
15
16
17
18
19
20
21   Pursuant to notice, before Bonnie L. Russo,
22   Notary Public
```

Page 4

```
 1           C O N T E N T S
 2   EXAMINATION OF PATRICK J. SPALDING    PAGE
 3   BY MR. BRANCH               5
 4
 5
 6
 7
 8   EXHIBITS
 9   (NONE)
10
11
12
13
14
15
16
17
18
19
20
21
22
```

Page 3

```
 1   APPEARANCES:
 2   For the Plaintiff
 3       DAVID A. BRANCH, Esq.
 4       LAW OFFICES OF DAVID A. BRANCH
 5       1825 Connecticut Avenue, N.W.
 6       Suite 690
 7       Washington, D.C. 20009
 8       202-785-2805
 9
10   For the Defendant
11       JUDITH KIDWELL, Esq.
12       UNITED STATES ATTORNEY'S OFFICE
13       555 4th Street, N.W.
14       Civil Division
15       Room E4905
16       Washington, D.C. 20530
17       202-514-7250
18
19   Also Present:
20   NENA HEWITT, Esq.
21   UNITED STATES DEPARTMENT OF AGRICULTURE
22   Sederis Fields
```

Page 5

```
 1           P-R-O-C-E-E-D-I-N-G-S
 2           PATRICK J. SPALDING,
 3   being first duly sworn, to tell the truth, the
 4       whole truth and nothing but the truth,
 5       testified as follows:
 6   EXAMINATION BY COUNSEL FOR PLAINTIFF
 7       BY MR. BRANCH:
 8   Q.   Please state your name.
 9   A.   Patrick J. Spalding.
10   Q.   Mr. Spalding, my name is David
11   Branch. My office represents Sederis Fields.
12   I'm here today to take your deposition. I
13   don't think we will go very long today but if
14   you need to take a break at any point during
15   the course of the deposition just let me know
16   and I will be more than happy to accommodate
17   that request. It's important that you provide
18   a verbal response of each question. It's not
19   appropriate to nod your head or respond in any
20   way other than a verbal response.
21       Do you understand you are under
22   oath?
```

2 (Pages 2 to 5)

Patrick Spalding

Page 6

1    A.    Yes.

2    Q.    It's your obligation to answer each
3    question truthfully and fully.  If you are not
4    sure what is being asked of you just let me
5    know and I will repeat the question so we get a
6    clear answer.

7            Are you taking any medication or
8    receiving any medical treatment which would
9    impair your ability to answer questions
10   truthfully and honestly?

11   A.    No, I'm not.

12   Q.    Are you currently employed?

13   A.    Yes, I am.

14   Q.    Who is your employer?

15   A.    USDA Farm Service Agency.

16   Q.    What is your current grade, title
17   and series?

18   A.    I am a GS 301, Grade 14, and the
19   title is administrative specialist.

20   Q.    What is the series number?

21   A.    301.

22   Q.    What do you do in this position?

Page 7

1    A.    I provide support to the field
2    offices.

3    Q.    What type of support?

4    A.    Administrative.

5    Q.    What do you mean by administrative?

6    A.    Personnel, budget, workload.

7    Q.    Personnel, budget and workload?

8    A.    Yes.

9    Q.    What do you mean by personnel?  What
10   type of support do you provide to the field
11   offices?

12   A.    They will call in with questions and
13   we will either provide them an answer or we
14   will get them an answer.

15   Q.    Questions such as?

16   A.    Classification, staffing, employer
17   relations issues, conduct issues, what do we do
18   in this case or that case.

19   Q.    What type of budgeting support do
20   you provide?

21   A.    The field will contact us for a
22   need, a special need to buy equipment,

Page 8

1    furniture.  If they need additional personnel
2    we work as a liaison at the budget staff to
3    give them the resources.

4    Q.    So you are not actually doing a
5    budget.  You are just working with the field
6    office to get them the resources that they
7    need?

8    A.    If you are asking me if I provide
9    them a budget?

10   Q.    Yes.

11   A.    No, I do not provide a budget.

12   Q.    You don't prepare a budget, correct?

13   A.    No.

14   Q.    And I think you said that the third
15   thing was workload?

16   A.    Provide workload support.

17   Q.    Yes.  What is that?

18   A.    That's how we measure the work
19   activity in the field.  What needs to get done.
20   What gets done.  We use that to provide
21   staffing.

22   Q.    Who do you report to in your current

Page 9

1    position?

2    A.    Linda Treese.

3    Q.    How long have you been in this
4    position?

5    A.    Three years, three and a half.

6    Q.    Did you start in July of 2003?

7    A.    August of 2003.

8    Q.    How far have you gone in school?

9    A.    College, four years of college.

10   Q.    Do you have a college degree?

11   A.    Yes, I do.

12   Q.    From what school?

13   A.    Purdue University.

14   Q.    What year?

15   A.    1982.

16   Q.    Do you hold any other degrees?

17   A.    No.

18   Q.    What is the area of concentration
19   for your degree?

20   A.    Animal science.

21   Q.    What years did you attend Purdue
22   University?

3 (Pages 6 to 9)

Patrick Spalding

Page 10

1    A.   1978 through '82.
2    Q.   What year did you finish high
3  school?
4    A.   1978.
5    Q.   Have you attended any other
6  university?
7    A.   No.
8    Q.   So Purdue University is the only
9  university that you have attended?
10   A.   Yes.
11   Q.   Do you hold degrees from any other
12 schools or universities?
13   A.   No.
14   Q.   What type of course work is required
15 for a degree in animal science?
16   A.   I'm not sure of the question.
17   Q.   What type of course work did you
18 have to complete to get a degree in animal
19 science?
20   A.   Basic -- animal science degree is
21 based on courses dealing with animal husbandry
22 and about chemistry, microbiology, algebra,

Page 11

1  geometry, all the sciences.  Animal live stock
2  breeding, physiology, reproduction, animal
3  nutrition.
4    Q.   Did you take courses in those areas?
5    A.   Yes, I did.
6    Q.   How long have you worked for the
7  USDA?
8    A.   23 and a half years.
9    Q.   When did you start with USDA?
10   A.   In May of 1983.
11   Q.   So you finished college in '82 and
12 you started at USDA in May of '83?
13   A.   Yes, sir.
14   Q.   What was the first position you held
15 with USDA?
16   A.   Assistant county supervisor.
17   Q.   Assistant county supervisor?
18   A.   Yes.
19   Q.   And where was your work location?
20   A.   Franklin, Indiana.
21   Q.   What was your grade?
22   A.   GS-5.

Page 12

1    Q.   Was it GS-5 or CO 5?
2    A.   GS.
3    Q.   GS-5?
4    A.   Yes.
5    Q.   How long were you in that position?
6    A.   Two and a half years.
7    Q.   What was your next position?
8    A.   County supervisor.
9    Q.   For which county?
10   A.   It was Cass County.
11   Q.   Is that in Indiana?
12   A.   Yes, it is.
13   Q.   What was your grade there?
14   A.   GS-11.
15   Q.   So your first position was assistant
16 county supervisor at the Grade 5 level and then
17 your next position was county supervisor at the
18 Grade 11 level?
19   A.   Yes.
20   Q.   Did you go to 7, 9?
21   A.   Yes.
22   Q.   So after the Grade 5 what was the

Page 13

1  next grade that you obtained?
2    A.   A 7.
3    Q.   How long did it take you to obtain
4  the 7?
5    A.   One year.
6    Q.   What was the next grade after that?
7    A.   A 9.
8    Q.   How long did it take you to obtain
9  that grade?
10   A.   One year.
11   Q.   So when did you become county
12 supervisor at the Grade 11 level?
13   A.   I don't recall that date.
14   Q.   Was it approximately two and a half
15 years after you started with the USDA?
16   A.   No.
17   Q.   How long had you worked for the USDA
18 before you became a Grade 11?
19   A.   Three years. They were all one year
20 apart, each promotion.
21   Q.   When you were the county supervisor
22 which county was this?

4 (Pages 10 to 13)

Patrick Spalding

Page 14

1    A.    Cass County. C-A-S-S.
2    Q.    How long were you the county
3  supervisor at Cass County?
4    A.    Approximately two years.
5    Q.    What was your next position?
6    A.    I was administrative officer
7  trainee.
8    Q.    Where did you work as an
9  administrative officer trainee?
10    A.    Little Rock, Arkansas.
11    Q.    How long were you in that position?
12    A.    Two -- approximately two and a half
13  years.
14    Q.    You were an administrative officer
15  trainee for two and a half years?
16    A.    Let me correct that. It was two.
17  Two years.
18    Q.    Two years?
19    A.    Two years.
20    Q.    So you were an administrative
21  officer trainee?
22    A.    Uh-huh.

Page 15

1    Q.    For two years?
2    A.    Yes, sir.
3    Q.    And in Little Rock, Arkansas?
4    A.    Yes.
5    Q.    What was your grade there?
6    A.    GS-11.
7    Q.    What was your next position?
8    A.    Administrator officer.
9    Q.    And where was that work location?
10    A.    Amhurst, Massachusetts.
11    Q.    What was your grade?
12    A.    GS-12.
13    Q.    How long were you in that position?
14    A.    11 months.
15    Q.    What was your next position?
16    A.    Contracting officer.
17    Q.    And let me just -- for the
18  administrative officer position you held for 11
19  months, what period of time was that?
20    A.    May 1991 through March 1992.
21    Q.    May of '91 until March of '92?
22    A.    I believe that's correct.

Page 16

1    Q.    And your grade was a 12?
2    A.    Yes.
3    Q.    And where did you work after that?
4    A.    St. Paul, Minnesota.
5    Q.    What was your position?
6    A.    Contracting officer.
7    Q.    What was your grade?
8    A.    11.
9    Q.    So how did you come to leave a Grade
10  12 position to accept a Grade 11?
11    A.    Applied for the job and asked for a
12  transfer and a voluntary change of lower grade.
13    Q.    Why did you do that?
14    A.    Personal reasons.
15    Q.    What personal reasons?
16    A.    My wife and I didn't like the east
17  coast. We are mid westerners. I am a mid
18  westerner. Closer to home.
19    Q.    You are on the east coast now?
20    A.    Yes, sir, I am.
21    Q.    So you asked for a lower graded
22  position and you accepted a position in St.

Page 17

1  Paul, Minnesota?
2    A.    Yes.
3    Q.    And how long were you in this
4  position?
5    A.    Eight years.
6    Q.    This was a -- was it a loan
7  specialist position? I'm sorry what was the
8  title?
9    A.    Contract specialist.
10    Q.    Contract specialist. What was the
11  series for that position?
12    A.    1102.
13    Q.    When you were an administrative
14  officer for 11 months what was the series for
15  that position?
16    A.    341.
17    Q.    Now, what was the next position
18  after the contract specialist position?
19    A.    Loan specialist.
20    Q.    Where was that position?
21    A.    Washington, D.C.
22    Q.    What was your grade?

5 (Pages 14 to 17)

Patrick Spalding

Page 18

1    A.   GS-13.
2    Q.   What was the series for that
3   position?
4    A.   1165.
5    Q.   How did you obtain this position,
6   the loan specialist position at the Grade 13
7   level?
8    A.   I was selected through merit
9   promotion.
10    Q.   So when you left St. Paul, Minnesota
11   what was your grade?
12    A.   GS-11.
13    Q.   Was there a requirement that you
14   serve at least one year at the next lower
15   level?
16    A.   Yes, sir, there was.
17    Q.   Had you done that?
18    A.   When I left St. Paul I took a
19   position with the farm loan program staff. It
20   was a 12/13 so I did serve one year at a GS-12
21   before I became the 13. Full promotion
22   potential was a 13.

Page 19

1    Q.   I thought you were -- you told me
2   that when you left St. Paul your position was a
3   11?
4    A.   It was.
5    Q.   Then maybe I missed something. You
6   said that you served as a 12. You were in a
7   11/12 position?
8    A.   Are you talking about St. Paul or
9   Washington?
10    Q.   Well, in Washington you told me you
11   were at a 13?
12    A.   I was. It was full promotion
13   potential to 13. It was a 12/13.
14    Q.   So when you came to Washington did
15   you come as a 12 or as a 13?
16    A.   I came as a 12.
17    Q.   And for the St. Paul, Minnesota
18   position did you serve at the 12 level or at
19   the -- just at the 11 level?
20    A.   At the 11 level.
21    Q.   And you came to Washington as a loan
22   specialist as a Grade 12?

Page 20

1    A.   Yes.
2    Q.   What year was that that you came to
3   Washington?
4    A.   2000.
5    Q.   Who was your supervisor when you
6   came to Washington?
7    A.   Mike Hinton.
8    Q.   How long did you serve as a loan
9   specialist?
10    A.   Almost three years. It was three
11   years.
12    Q.   Was that until your current
13   position?
14    A.   Yes, sir.
15    Q.   How long were you a loan specialist?
16    A.   In Washington?
17    Q.   Yes. That's the only place you have
18   been a loan specialist, right?
19    A.   No.
20    Q.   Where else have you been a loan
21   specialist?
22    A.   In the county offices, an assistant

Page 21

1   county supervisor and as county supervisor.
2    Q.   Your grade was -- your title was
3   loan specialist?
4    A.   The official title was loan
5   specialist. The working title is county
6   supervisor.
7    Q.   Now, you were a -- I thought you
8   said you were an assistant county supervisor?
9    A.   Yes.
10    Q.   And you were also a county
11   supervisor?
12    A.   Yes.
13    Q.   Where were you a county supervisor?
14    A.   Cass County.
15    Q.   What period of time were you the
16   county supervisor in Cass County?
17    A.   I don't recall the specific times.
18    Q.   Was it before your position --
19   county supervisor. How long were you the
20   county supervisor in Cass County?
21    A.   A little more than two years.
22    Q.   Was that in Logan's Port?

6 (Pages 18 to 21)

Patrick  Spalding

Page 22

1     A.    Yes, it was.  That's the city.
2     Q.    So that was sometime between 1986
3  and 1987?
4     A.    Yes.
5     Q.    So that was about 15 years before
6  you applied for your current position?
7     A.    Yes.
8     Q.    So you started as a loan specialist
9  in Washington, D.C. at the Grade 12 level and
10  how long was it before you became a Grade 13?
11     A.    One year.
12     Q.    Your last position before your
13  current position was loan specialist?
14     A.    Yes.
15     Q.    Prior to your current position as a
16  loan -- as a 301 administrative specialist, is
17  that the correct title?
18     A.    Yes.
19     Q.    Had you served at least one year at
20  the Grade 13 level in the 301 series?
21     A.    No.
22     Q.    Prior to your selection at the Grade

Page 23

1  14 level in this administrative position had
2  you served in the 301 series at all?
3     A.    No.
4     Q.    Was that a requirement for the
5  application that you serve at least one year at
6  the lower grade level, next lower grade level?
7     A.    I can't answer that question.
8     Q.    Did you interview for your current
9  position?
10     A.    Yes.
11     Q.    Who did you interview with?
12     A.    Doug Frago, John Chott, Soloman
13  Ramirez and Linda Treese.
14     Q.    How many interviews did you have?
15     A.    Two.
16     Q.    Was there a panel for the first
17  interview?
18     A.    I don't know.
19     Q.    You don't know if there was a panel?
20     A.    I don't understand your question.
21     Q.    Was there an interviewing panel?
22     A.    Yes, there was an interviewing

Page 24

1  panel, yes.
2     Q.    Who was on the interviewing panel
3  for the first interview?
4     A.    Doug Frago, John Chott and Soloman
5  Ramirez.
6     Q.    And who was on the second panel?
7     A.    Doug Frago, John Chott, Linda
8  Treese.
9     Q.    Prior to interviewing for the --
10  with the first panel did you know any of the
11  panel members?
12     A.    No.
13     Q.    You didn't know Doug Frago?
14     A.    No.
15     Q.    Or John Chott?
16     A.    No.
17     Q.    Or Ramirez?
18     A.    No.
19     Q.    Did you work in any section
20  affiliated with any of these individuals?
21     A.    No.
22     Q.    Prior to interviewing for the second

Page 25

1  interview did you know Linda Treese?
2     A.    No.
3     Q.    I would like for you to walk me
4  through your application process; everything
5  that happened from the time you submitted your
6  application until you were informed that you
7  were selected for the application?
8     A.    I read the vacancy announcement on
9  the Internet.  I pulled my application
10  information together, provided responses on the
11  Internet to the questions.
12     Q.    Let me stop you there one second.
13  When you learned that there was a vacancy
14  announcement what was the section that you were
15  working in at the time?
16     A.    Farm loan programs, direct loan
17  making.
18     Q.    Farm loan programs?
19     A.    Direct loan making.
20     Q.    Direct loan making?
21     A.    Yes.
22     Q.    And where is that office located?

7 (Pages 22 to 25)

Patrick Spalding

Page 26

1    A.    Washington, D.C. Portals building.
2    Q.    And the position that you were
3  applying for was where?
4    A.    Was with the deputy field
5  administrator for field operations in the south
6  building.
7    Q.    Which building?
8    A.    The south building.
9    Q.    S-O-U-T-H?
10   A.    Yes.
11   Q.    Where was your current office in
12  relation to the deputy field operations office?
13   A.    Approximately two and a half blocks
14  south in a separate building.
15   Q.    And your testimony is that you did
16  not know any of the folks on the interviewing
17  panel?
18   A.    Yes.
19   Q.    That was the first time you met them
20  when you walked in the interview?
21   A.    Yes.
22   Q.    So what happened after you retrieved

Page 27

1  the vacancy announcement and pulled your
2  application together?
3    A.    I responded on the Internet.
4  Submitted the paperwork. I received a phone
5  call for an interview.
6    Q.    Who called you?
7    A.    I don't recall.
8    Q.    What happened after that?
9    A.    I went to the interview.
10   Q.    How many positions did you apply
11  for? Did you just apply for one position?
12   A.    Yes.
13   Q.    I think the last thing you said is
14  that you went to the interview?
15   A.    Yes, sir.
16   Q.    Do you recall any of the questions?
17   A.    No.
18   Q.    From the first interview?
19   A.    No.
20   Q.    What happened during this first
21  interview?
22   A.    They asked a series of questions

Page 28

1  about my background and then that was pretty
2  much the interview.
3    Q.    Who asked the questions?
4    A.    It alternated between the panel
5  members.
6    Q.    And what were you told at the end of
7  the interview?
8    A.    That they would review the
9  applications. They had more interviews and
10  they would be in touch in a week or two.
11   Q.    What happened after that?
12   A.    I received a call for a second
13  interview.
14   Q.    Who called you?
15   A.    The secretary.
16   Q.    What happened after that?
17   A.    We scheduled an interview and I had
18  another interview.
19   Q.    Were you told why there was a second
20  interview?
21   A.    That they had narrowed it down.
22   Q.    Who told you that?

Page 29

1    A.    Doug Frago during the interview told
2  me why I was there.
3    Q.    During the second or first
4  interview?
5    A.    Second interview.
6    Q.    So at the second interview Doug
7  Frago told you they had narrowed it down?
8    A.    To a fewer number than what they had
9  started with, yes.
10   Q.    What happened at the second
11  interview?
12   A.    There were more questions asked
13  about my background.
14   Q.    How long was the second interview?
15   A.    I don't recall the exact time.
16   Q.    Was it the same panel as the first
17  interview?
18   A.    No.
19   Q.    Were you told why it was a different
20  panel for the second interview?
21   A.    Yes.
22   Q.    What did they tell you why there was

8 (Pages 26 to 29)

Patrick Spalding

Page 30

1  a different panel?
2     A.   Linda Treese replaced Soloman
3  Ramirez because she had just been recently
4  selected as the supervisor of that section.
5     Q.   Do you recall how many questions
6  were asked of you in the second interview?
7     A.   No, I do not.
8     Q.   How long did the second interview
9  last?
10    A.   I don't recall it being any longer
11 than the first.
12    Q.   Which was how long?
13    A.   I don't recall.  I know they were
14 similar in length.
15    Q.   What happened after the second
16 interview?
17    A.   I received a call.  It was a week, a
18 few days -- between three and five days I got a
19 call from John Chott that said Mr. Frago wanted
20 to speak with me.
21    Q.   Did he tell you why Frago wanted to
22 speak to you?

Page 31

1     A.   No, he did not.
2     Q.   Did you -- did he tell you anything
3  else?
4     A.   No.
5     Q.   Did you speak to Frago?
6     A.   Not at that time.
7     Q.   At some point did you speak to
8  Frago?
9     A.   Yes.
10    Q.   And what happened during that
11 conversation?
12    A.   He asked me if I was still
13 interested in the job.  That they were making
14 me an offer.
15    Q.   And how long was it after the second
16 interview that you got this call?
17    A.   I don't recall exact days.  It was
18 not a week but it was more than three.
19    Q.   What was your response?
20    A.   That I would need to discuss it with
21 my spouse.
22    Q.   Did you eventually get back to him?

Page 32

1     A.   Yes, I did.
2     Q.   What was your response?
3     A.   I accepted the position.
4     Q.   After you were hired did you have to
5  go to any specialized training for the
6  position?
7     A.   Are you asking me did I have to go
8  to specialized training for the position?
9     Q.   Let me clarify that.  Did you go to
10 any training after you received the job?
11    A.   Yes.
12    Q.   What type of training?
13    A.   Resolving official.
14    Q.   What is that?
15    A.   It's an in-house course put on by
16 the Equal Opportunity Civil Rights staff where
17 they train you to be a resolver for the agency.
18    Q.   Why was it necessary for you to go?
19    A.   I was asked to go.  I was told to
20 go.
21    Q.   Had you received resolving official
22 training before?

Page 33

1     A.   No, I have not.
2     Q.   Have you been called upon to serve
3  as a resolving official since your selection
4  for this 14 position?
5     A.   Yes.
6     Q.   On how many occasions?
7     A.   Three, four.  Three or four.
8     Q.   Did you attend any other training?
9     A.   Electronic correspondence training.
10    Q.   What was the purpose of the
11 electronic correspondence training?
12    A.   The department agencies were
13 implementing electronic correspondence tracking
14 system.
15    Q.   Did you attend any other training?
16    A.   No.
17    Q.   Have you received training in
18 personnel, conduct, investigator -- personnel,
19 conduct, investigator training?
20    A.   No.
21    Q.   Prior to your selection for this 14
22 position, administrative 301 series position,

9 (Pages 30 to 33)

Patrick Spalding

Page 34

1 had you performed any personnel matters in
2 prior positions?
3    A.   Yes.
4    Q.   Which prior positions had you worked
5 on personnel issues?
6    A.   Two positions.  Administrative
7 officer trainee which is 341 series and
8 administrative officer which is 341 series.
9    Q.   Where was that work location?
10    A.   Little Rock, Arkansas and Amhurst,
11 Massachusetts.
12    Q.   And that was '91 to '92 that you
13 worked in Amhurst, Massachusetts?
14    A.   Correct.
15    Q.   May '91 until March 20 of '92?
16    A.   Yes.
17    Q.   That was ten months, roughly ten
18 months?
19    A.   Yes.
20    Q.   That was about 10 or 11 years before
21 this promotion?
22    A.   I'm not doing the math, but, yeah.

Page 35

1 That sounds right.
2    Q.   The position in Arkansas was before
3 the position in Massachusetts?
4    A.   Yes.
5    Q.   Were you told how you ranked against
6 the other candidates for this 301 series
7 position?
8    A.   No.
9       MR. NAGEL:  I'm going to take a
10 short break here.  Let's go off the record.
11       (A short recess was taken.)
12       BY MR. BRANCH:
13    Q.   Mr. Spalding, I have a couple
14 additional questions.
15       As I understand from your prior
16 testimony you had the second interview with the
17 panel of Treese, Frago and Chott?
18    A.   Yes.
19    Q.   That's correct?
20    A.   Yes.
21    Q.   And then at some point after that
22 you received a call from John Chott?

Page 36

1    A.   Yes.
2    Q.   How many -- do you recall how many
3 days after the second interview that you
4 received a call from John Chott?
5    A.   I don't recall the exact number of
6 days.  I believe to the best of my knowledge it
7 was three -- it was more than three to the best
8 of my knowledge.
9    Q.   More than three days?
10    A.   (Witness nodding head.)
11    Q.   Is that a yes?  You have to say yes.
12    A.   Yes.
13    Q.   But you believe less than a week?
14    A.   Yes.
15    Q.   Then when you received the call from
16 John Chott were you at work or were you at
17 home?
18    A.   I was on my way home.
19    Q.   He called you on your cell phone?
20    A.   Yes.  I'm sorry.  I was incorrect.
21 Can I -- he left a voice mail on my phone at
22 work.  He did not call my cell phone.

Page 37

1    Q.   He left a voice mail.  What did he
2 say in the voice mail?
3    A.   That it was John Chott and that I
4 was supposed to return a call to him.
5    Q.   Were you at work that day?
6    A.   Yes, I was at work that day.
7    Q.   And when did you get the voice mail
8 message?
9    A.   I was on my van going home.
10    Q.   You were on your van or in your van?
11    A.   I was in my van going home.
12    Q.   And when did you retrieve the
13 message?
14    A.   Approximately 5:00.
15    Q.   How do you know it was 5:00 when you
16 retrieved the message?
17    A.   We just arrived in the parking lot.
18 I was getting off the van.  That was our normal
19 arrival time.
20    Q.   Do you ride a shuttle into the city?
21    A.   Yes.
22    Q.   What are they called?

10 (Pages 34 to 37)

Patrick Spalding

Page 38

1    A.    Van pool.
2    Q.    So you were on the van pool when the
3  call actually came in?
4    A.    Correct.
5    Q.    You say it was approximately 5:00?
6    A.    I don't know when the voice mail
7  picked up the call.
8    Q.    And what time do you usually take
9  your van pool?
10   A.    4:00.
11   Q.    And you take it from where to where?
12   A.    From the south building to
13 Fredericksburg.
14   Q.    How long does it take for that trip?
15   A.    Approximately an hour.
16   Q.    So you get on the van at 4.  You
17 were on the van for an hour, it takes you?
18   A.    Approximately.
19   Q.    Did you say Frederick or
20 Fredericksburg?
21   A.    Fredericksburg, Virginia.
22   Q.    So you were on the van an hour and

Page 39

1  then you picked up the message?
2    A.    Yes.
3    Q.    When you got to Fredericksburg?
4    A.    Yes.
5    Q.    What did you do when you picked up
6  the message?
7    A.    I returned a call to John Chott.
8    Q.    Did you call him immediately?
9    A.    After getting the voice mail
10 message?
11   Q.    Yes.
12   A.    No.
13   Q.    What I am trying to figure out did
14 you stop when you got to Fredericksburg and
15 call him at that point or did you wait and call
16 him the next day?
17   A.    I called him a few minutes later.
18   Q.    So sometime after 5:00?
19   A.    Yes.
20   Q.    You don't recall the date that you
21 called him?
22   A.    No, I don't.

Page 40

1    Q.    Did you get an e-mail or anything
2  else from him?
3    A.    No.
4    Q.    So was there any written
5  communication whatsoever?
6    A.    No.
7    Q.    So you had -- you called Chott back
8  after you got to Fredericksburg?
9    A.    Correct.
10   Q.    And that's when you had the
11 conversation with him that you referenced
12 earlier?
13   A.    Yes.
14   Q.    Was that the conversation where he
15 told you that Doug Frago wanted to talk to you?
16   A.    Yes.
17   Q.    And what was your response to that?
18   A.    That Doug Frago wanted to speak to
19 me?
20   Q.    Yes.
21   A.    What was my response?
22   Q.    Yes.  How did you respond to that

Page 41

1  when he said Doug Frago wants to speak to you?
2    A.    I said, well, I'm available to speak
3  now.  He said Doug was on another call.  Could
4  Doug call me back.
5    Q.    Did that happen?
6    A.    Yes, it did.
7    Q.    When did Doug call you back -- Frago
8  call you back?
9    A.    30 to 45 minutes later.
10   Q.    Where were you when he called you
11 back?
12   A.    My apartment, home.
13   Q.    Is that in Fredericksburg?
14   A.    Yes.
15   Q.    So if you got this call, the initial
16 call at 5:00 and Frago calls you back at 30 to
17 45 minutes, is it about 6:00 when he calls you?
18   A.    It's before 6.
19   Q.    Frago calls you at home before 6
20 p.m.?
21   A.    Yes.
22   Q.    How do you know it was before 6

11 (Pages 38 to 41)

Patrick Spalding

Page 42

1   p.m.?
2       A.   Because that's when I would -- from
3   the time it takes me to get off my van to make
4   the call to John Chott to drive to where I was
5   living at the time was approximately 30
6   minutes.  And as I walked in the door he had
7   called and left a message with my wife.
8       Q.   So Frago had already called and left
9   a message with your wife?
10      A.   Yes.
11      Q.   So you missed Frago's first call?
12      A.   Yes.
13      Q.   What did you do when he called?
14      A.   I called him.
15      Q.   Did you speak with him?
16      Q.   Did I speak with him?
17      Q.   Yes.  Did you have a chance to speak
18  with him?
19      A.   Yes.
20      Q.   He was still in the office?
21      A.   Yes.
22      Q.   And it was now approximately 6:00

Page 43

1   p.m.?
2       A.   Before 6 as I recall it.
3       Q.   What happened during this
4   conversation with Frago?
5       A.   That's the call I referenced earlier
6   where he offered me a position.
7       Q.   Do you recall if this was on a
8   Friday or Monday?
9       A.   I don't recall.
10      Q.   And then how did you respond when
11  Frago offered you the job?
12      A.   That I would need to speak with my
13  wife.
14      Q.   Was there anything else said in that
15  conversation between you and Frago?
16      A.   As -- I don't understand the
17  question.
18      Q.   After you said "I would need to
19  speak to my wife" was there anything else said
20  in this conversation between you and Frago?
21      A.   Other than -- I told him I would let
22  him know in the next day.  That's all.

Page 44

1       Q.   And what was his response to that?
2       A.   That would be fine.
3       Q.   And when did you actually speak to
4   Frago after that?
5       A.   The next day.
6       Q.   So the day after you spoke to Chott
7   you had this initial call with Chott and you
8   spoke to Frago later in the evening it was
9   actually the following day that you actually
10  spoke to Doug Frago about whether you would
11  accept the position; is that correct?
12      A.   Are you asking me did I accept the
13  position the next day?
14      Q.   Yes.
15      A.   Yes, I did.
16      Q.   I just want to be clear that one day
17  Chott calls you and then Frago calls you and
18  speaks to your wife and you call Frago back and
19  then you tell Frago you need to speak to your
20  wife and then you actually call Frago the
21  following day?
22      A.   To the best of my recollection, yes.

Page 45

1       Q.   And what happened in this
2   conversation when you spoke to Frago the
3   following day?
4       A.   I told Mr. Frago I accepted the
5   position.
6       Q.   And the first day, on day one, let's
7   just say day one, Frago actually offered you
8   the position; is that correct?
9       A.   I don't understand the question.
10      Q.   You spoke to Frago on two days.  The
11  first day and then the second day?
12      A.   Yes.
13      Q.   On day one Frago actually offered
14  you the job; is that correct?
15      A.   Yes.
16      Q.   That was approximately 5:00 or so or
17  maybe a minute or so before 6?
18      A.   Yes.
19      Q.   And then the following day after you
20  spoke to -- after you spoke to your wife the
21  following day you called Frago and told him you
22  accepted the position?

12 (Pages 42 to 45)

Patrick Spalding

Page 46

1    A.   Yes.

2    Q.   Just wanted to be clear on that.

3         MR. NAGEL:  Okay.  I think that's

4    it.  Thank you for your time.

5         (Whereupon, the proceeding was

6    concluded at 12:52 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 47

1         ACKNOWLEDGMENT OF DEPONENT

2    I, PATRICK J. SPALDING, do hereby acknowledge I

3    have read and examined the foregoing pages of

4    testimony, and the same is a true, correct and

5    complete transcription of the testimony given

6    by me, and any changes or corrections, if any,

7    appear in the attached errata sheet signed by

8    me.

9    _____    _____

10   Date        PATRICK J. SPALDING

11

12

13

14

15

16

17

18

19

20

21

22

Page 48

1         CERTIFICATE OF NOTARY PUBLIC

2    I, Bonnie L. Russo, the officer before

3    whom the foregoing deposition was taken, do

4    hereby certify that the witness whose testimony

5    appears in the foregoing deposition was duly

6    sworn by me; that the testimony of said witness

7    was taken by me in shorthand and thereafter

8    reduced to computerized transcription under my

9    direction; that said deposition is a true

10   record of the testimony given by said witness;

11   that I am neither counsel for, related to, nor

12   employed by any of the parties to the action in

13   which this deposition was taken; and further,

14   that I am not a relative or employee of any

15   attorney or counsel employed by the parties

16   hereto, nor financially or otherwise interested

17   in the outcome of the action.

18   _____

19        Notary Public in and for

20        the District of Columbia

21   My Commission expires:  May 14, 2010

22

Page 49

1    Ms. Judith Kidwell
     U.S. Attorney's Office
2    555 4th Street, NW
     Civil Division
3    Room E4905
     Washington, DC 20530
4
5
6
     IN RE:  Fields vs. Mike Johanns
7
8
     Dear Ms. Kidwell,
9
     Enclosed please find your copy of the
10   deposition of PATRICK J. SPALDING along with
     the original signature page.  As agreed, you
11   will be responsible for contacting the witness
     regarding reading and signing the transcript.
12
     Within 30 days of receipt, please forward
13   errata sheet and original signature page signed
     to opposing counsel.
14
     If you would like to change this procedure or
15   if you have any questions, please do not
     hesitate to call.
16
     Thank you.
17
     Yours,
18
19
20
     Bonnie L. Russo
21   Reporter/Notary
22

13 (Pages 46 to 49)

Page 50

```
1         DEPOSITION ERRATA SHEET
          CASE CAPTION: Fields vs. Johanns
2    DEPONENT: Patrick J. Spalding
          DEPOSITION DATE: March 12, 2007
3         I have read the entire transcript of my
          Deposition taken in the captioned matter or the
4    same has been read to me. I request that the
          changes noted on the following errata sheet be
5    entered upon the record for the reasons
          indicated. I have signed my name to the Errata
6    Sheet and the appropriate Certificate and
          authorize you to attach both to the original
7    transcript.
     PAGE/LINE    CHANGE       REASON
8    _____ _____ _____ _____ _____
9    _____ _____ _____ _____ _____
10   _____ _____ _____ _____ _____
11   _____ _____ _____ _____ _____
12   _____ _____ _____ _____ _____
13   _____ _____ _____ _____ _____
14   _____ _____ _____ _____ _____
15   _____ _____ _____ _____ _____
16   _____ _____ _____ _____ _____
17   _____ _____ _____ _____ _____
18   _____ _____ _____ _____ _____
     SIGNATURE_____DATE_____
19        PATRICK J. SPALDING
20
21
22
```

14 (Page 50)

Patrick  Spalding

**A**
ability 6:9
accept 16:10
44:11,12
accepted 16:22
32:3 45:4,22
accommodate
5:16
acknowledge
47:2
ACKNOWLE...
47:1
action 1:7
48:12,17
activity 8:19
additional 8:1
35:14
administrative
6:19 7:4,5
14:6,9,14,20
15:18 17:13
22:16 23:1
33:22 34:6,8
administrator
15:8 26:5
affiliated 24:20
agencies 33:12
agency 6:15
32:17
agreed 49:10
AGRICULTU...
1:10 3:21
algebra 10:22
alternated 28:4
Amhurst 15:10
34:10,13
animal 9:20
10:15,18,20
10:21 11:1,2
announceme...
25:8,14 27:1
answer 6:2,6,9
7:13,14 23:7
apart 13:20
apartment
41:12

appear 47:7
APPEARANC...
3:1
appears 48:5
application
23:5 25:4,6,7
25:9 27:2
applications
28:9
applied 16:11
22:6
apply 27:10,11
applying 26:3
appropriate
5:19 50:6
approximately
13:14 14:4,12
26:13 37:14
38:5,15,18
42:5,22 45:16
area 9:18
areas 11:4
Arkansas
14:10 15:3
34:10 35:2
arrival 37:19
arrived 37:17
asked 6:4
16:11,21
27:22 28:3
29:12 30:6
31:12 32:19
asking 8:8 32:7
44:12
assistant 11:16
11:17 12:15
20:22 21:8
attach 50:6
attached 47:7
attend 9:21
33:8, i5
attended 10:5
10:9
attorney 48:15
Attorney's 3:12
49:1

August 9:7
authorize 50:6
available 41:2
Avenue 2:12
3:5

**B**
back 31:22
40:7 41:4,7,8
41:11,16
44:18
background
28:1 29:13
based 10:21
Basic 10:20
believe 15:22
36:6,13
best 36:6,7
44:22
blocks 26:13
Bonnie 1:21
2:21 48:2
49:20
Branch 2:11
3:3,4 4:3 5:7
5:11 35:12
break 5:14
35:10
breeding 11:2
budget 7:6,7
8:2,5,9,11,12
budgeting 7:19
building 26:1,6
26:7,8,14
38:12
buy 7:22

**C**
C 4:1
call 7:12 27:5
28:12 30:17
30:19 31:16
35:22 36:4,15
36:22 37:4
38:3,7 39:7,8
39:15,15 41:3
41:4,7,8,15

41:16 42:4,11
43:5 44:7,18
44:20 49:15
called 27:6
28:14 33:2
36:19 37:22
39:17,21 40:7
41:10 42:7,8
42:13,14
45:21
calls 41:16,17
41:19 44:17
44:17
candidates
35:6
CAPTION 50:1
captioned 50:3
case 7:18,18
50:1
Cass 12:10
14:1,3 21:14
21:16,20
cell 36:19,22
Certificate 48:1
50:6
certify 48:4
chance 42:17
change 16:12
49:14 50:7
changes 47:6
50:4
chemistry
10:22
Chott 23:12
24:4,7,15
30:19 35:17
35:22 36:4,16
37:3 39:7
40:7 42:4
44:6,7,17
city 22:1 37:20
Civil 1:4,7 3:14
32:16 49:2
clarify 32:9
Classification
7:16

clear 6:6 44:16
46:2
Closer 16:18
coast 16:17,19
college 9:9,9
9:10 11:11
Columbia 1:3
48:20
come 16:9
19:15
Commission
48:21
communicati...
40:5
complete
10:18 47:5
computerized
48:8
concentration
9:18
concluded
46:6
conduct 7:17
33:18,19
Connecticut
2:12 3:5
contact 7:21
contacting
49:11
contract 17:9
17:10,18
Contracting
15:16 16:6
conversation
31:11 40:11
40:14 43:4,15
43:20 45:2
copy 49:9
correct 8:12
14:16 15:22
22:17 34:14
35:19 38:4
40:9 44:11
45:8,14 47:4
corrections
47:6

Patrick Spalding

Page 52

| | | | | |
|---|---|---|---|---|
| **corresponde...** 33:9,11,13 | **dealing** 10:21 | **east** 16:16,19 | **figure** 39:13 | **furniture** 8:1 |
| **counsel** 5:6 48:11,15 49:13 | **Dear** 49:8 **Defendant** 1:11 3:10 | **Eight** 17:5 **either** 7:13 **electronic** 33:9 | **financially** 48:16 **find** 49:9 | **further** 48:13 |
| **county** 11:16 11:17 12:8,9 12:10,16,17 13:11,21,22 14:1,2,3 20:22 21:1,1 21:5,8,10,13 21:14,16,16 21:19,20,20 | **degree** 9:10,19 10:15,18,20 **degrees** 9:16 10:11 **department** 1:9 3:21 33:12 **DEPONENT** 47:1 50:2 | 33:11,13 **employed** 6:12 48:12,15 **employee** 48:14 **employer** 6:14 7:16 **Enclosed** 49:9 | **fine** 44:2 **finish** 10:2 **finished** 11:11 **first** 5:3 11:14 12:15 23:16 24:3,10 26:19 27:18,20 29:3 29:16 30:11 42:11 45:6,11 | **G** **geometry** 11:1 **getting** 37:18 39:9 **give** 8:3 **given** 47:5 48:10 **go** 5:13 12:20 32:5,7,9,18 |
| **couple** 35:13 **course** 5:15 10:14,17 32:15 | **deposition** 1:15 2:9 5:12 5:15 48:3,5,9 48:13 49:10 50:1,2,3 | **entered** 50:5 **entire** 50:3 **Equal** 32:16 **equipment** 7:22 | **five** 30:18 **folks** 26:16 **following** 44:9 44:21 45:3,19 | 32:19,20 35:10 **going** 35:9 37:9,11 **grade** 6:16,18 |
| **courses** 10:21 11:4 **COURT** 1:2 **current** 6:16 8:22 20:12 22:6,13,15 23:8 26:11 | **deputy** 26:4,12 **different** 29:19 30:1 **direct** 25:16,19 25:20 **direction** 48:9 **discuss** 31:20 | **errata** 47:7 49:13 50:1,4 50:5 **Esq** 3:3,11,20 **evening** 44:8 **eventually** 31:22 | 45:21 50:4 **follows** 5:5 **foregoing** 47:3 48:3,5 **forward** 49:12 **four** 9:9 33:7,7 | 11:21 12:13 12:16,18,22 13:1,6,9,12 13:18 15:5,11 16:1,7,9,10 16:12 17:22 18:6,11 19:22 |
| **currently** 6:12 **C-A-S-S** 14:1 | **District** 1:2,3 48:20 **Division** 1:4 3:14 49:2 | **exact** 29:15 31:17 36:5 **EXAMINATION** 4:2 5:6 | **Frago** 23:12 24:4,7,13 29:1,7 30:19 30:21 31:5,8 | 21:2 22:9,10 22:20,22 23:6 23:6 **graded** 16:21 |
| **D** **date** 13:13 39:20 47:10 50:2,18 | **doing** 8:4 34:22 **door** 42:6 **Doug** 23:12 24:4,7,13 | **examined** 47:3 **EXHIBITS** 4:8 **expires** 48:21 **e-mail** 40:1 | 35:17 40:15 40:18 41:1,7 41:16,19 42:8 43:4,11,15,20 44:4,8,10,17 | **GS** 6:18 12:2 **GS-11** 12:14 15:6 18:12 **GS-12** 15:12 |
| **David** 2:11 3:3 3:4 5:10 **day** 37:5,6 39:16 43:22 44:5,6,9,13 | 29:1,6 40:15 40:18 41:1,3 41:4,7 44:10 **drive** 42:4 **duly** 5:3 48:5 | **E4905** 3:15 49:3 **F** **far** 9:8 | 44:18,19,20 45:2,4,7,10 45:13,21 **Frago's** 42:11 **Franklin** 11:20 | 18:20 **GS-13** 18:1 **GS-5** 11:22 12:1,3 |
| 44:16,21 45:3 45:6,6,7,11 45:11,13,19 45:21 | **D.C** 1:16 2:14 3:7,16 17:21 22:9 26:1 | **farm** 6:15 18:19 25:16 25:18 **fewer** 29:8 | **Frederick** 38:19 **Fredericksb...** 38:13,20,21 | **H** **half** 9:5 11:8 12:6 13:14 14:12,15 |
| **days** 30:18,18 31:17 36:3,6 36:9 45:10 49:12 **DC** 49:3 | **E** **E** 4:1 **earlier** 40:12 43:5 | **field** 7:1,10,21 8:5,19 26:4,5 26:12 **Fields** 1:5 3:22 5:11 49:6 50:1 | 39:3,14 40:8 41:13 **Friday** 43:8 **full** 18:21 19:12 **fully** 6:3 | 26:13 **happen** 41:5 **happened** 25:5 26:22 27:8,20 28:11,16 29:10 30:15 |

31:10 43:3
45:1
**happy** 5:16
**head** 5:19
36:10
**held** 2:9 11:14
15:18
**hereto** 48:16
**hesitate** 49:15
**HEWITT** 3:20
**high** 10:2
**Hinton** 20:7
**hired** 32:4
**hold** 9:16 10:11
**home** 16:18
36:17,18 37:9
37:11 41:12
41:19
**honestly** 6:10
**hour** 38:15,17
38:22
**husbandry**
10:21

**I**

**immediately**
39:8
**impair** 6:9
**implementing**
33:13
**important** 5:17
**incorrect** 36:20
**Indiana** 11:20
12:11
**indicated** 50:5
**individuals**
24:20
**information**
25:10
**informed** 25:6
**initial** 41:15
44:7
**interested**
31:13 48:16
**Internet** 25:9
25:11 27:3

**interview** 23:8
23:11,17 24:3
25:1 26:20
27:5,9,14,18
27:21 28:2,7
28:13,17,18
28:20 29:1,4
29:5,6,11,14
29:17,20 30:6
30:8,16 31:16
35:16 36:3
**interviewing**
23:21,22 24:2
24:9,22 26:16
**interviews**
23:14 28:9
**investigator**
33:18,19
**in-house** 32:15
**issues** 7:17,17
34:5

**J**

**J** 1:15 2:9 4:2
5:2,9 47:2,10
49:10 50:2,19
**job** 1:22 16:11
31:13 32:10
43:11 45:14
**Johanns** 1:8
49:6 50:1
**John** 23:12
24:4,7,15
30:19 35:22
36:4,16 37:3
39:7 42:4
**Judith** 3:11
49:1
**July** 9:6

**K**

**Kidwell** 3:11
49:1,8
**know** 5:15 6:5
23:18,19
24:10,13 25:1
26:16 30:13

37:15 38:6
41:22 43:22
**knowledge**
36:6,8

**L**

**L** 1:21 2:21
48:2 49:20
**Law** 2:11 3:4
**learned** 25:13
**leave** 16:9
**left** 18:10,18
19:2 36:21
37:1 42:7,8
**length** 30:14
**let's** 35:10 45:6
**level** 12:16,18
13:12 18:7,15
19:18,19,20
22:9,20 23:1
23:6,6
**liaison** 8:2
**Linda** 9:2 23:13
24:7 25:1
30:2
**little** 14:10 15:3
21:21 34:10
**live** 11:1
**living** 42:5
**loan** 17:6,19
18:6,19 19:21
20:8,15,18,20
21:3,4 22:8
22:13,16
25:16,16,18
25:19,20
**located** 25:22
**location** 11:19
15:9 34:9
**Logan's** 21:22
**long** 5:13 9:3
11:6 12:5
13:3,8,17
14:2,11 15:13
17:3 20:8,15
21:19 22:10
29:14 30:8,12

31:15 38:14
**longer** 30:10
**lot** 37:17
**lower** 16:12,21
18:14 23:6,6

**M**

**mail** 36:21 37:1
37:2,7 38:6
39:9
**making** 25:17
25:19,20
31:13
**March** 1:17 2:5
15:20,21
34:15 50:2
**Massachuse...**
15:10 34:11
34:13 35:3
**math** 34:22
**matter** 50:3
**matters** 34:1
**mean** 7:5,9
**measure** 8:18
**medical** 6:8
**medication** 6:7
**members**
24:11 28:5
**merit** 18:8
**message** 37:8
37:13,16 39:1
39:6,10 42:7
42:9
**met** 26:19
**microbiology**
10:22
**mid** 16:17,17
**Mike** 1:8 20:7
49:6
**Minnesota**
16:4 17:1
18:10 19:17
**minute** 45:17
**minutes** 39:17
41:9,17 42:6
**missed** 19:5
42:11

**Monday** 43:8
**months** 15:14
15:19 17:14
34:17,18

**N**

**N** 4:1,1
**NAGEL** 35:9
46:3
**name** 5:8,10
50:5
**narrowed**
28:21 29:7
**necessary**
32:18
**need** 5:14 7:22
7:22 8:1,7
31:20 43:12
43:18 44:19
**needs** 8:19
**neither** 48:11
**NENA** 3:20
**nod** 5:19
**nodding** 36:10
**normal** 37:18
**Notary** 2:22
48:1,19
**noted** 50:4
**notice** 2:21
**number** 6:20
29:8 36:5
**nutrition** 11:3
**NW** 49:2
**N.W** 2:12 3:5
3:13

**O**

**O** 4:1
**oath** 5:22
**obligation** 6:2
**obtain** 13:3,8
18:5
**obtained** 13:1
**occasions** 33:6
**offer** 31:14
**offered** 43:6,11
45:7,13

Patrick  Spalding

Page 54

| | | | | |
|---|---|---|---|---|
| **office** 3:12 5:11 8:6 25:22 26:11,12 42:20 49:1 | 19:8,17 **performed** 34:1 **period** 15:19 21:15 | **positions** 27:10 34:2,4 34:6 **potential** 18:22 19:13 | **questions** 6:9 7:12,15 25:11 27:16,22 28:3 29:12 30:5 35:14 49:15 | **Reported** 1:21 **Reporter/Not...** 49:21 **represents** 5:11 |
| **officer** 14:6,9 14:14,21 15:8 15:16,18 16:6 17:14 34:7,8 48:2 | **personal** 16:14 16:15 **personnel** 7:6 7:7,9 8:1 33:18,18 34:1 34:5 | **prepare** 8:12 **Present** 3:19 **pretty** 28:1 **prior** 22:15,22 24:9,22 33:21 | **R** **Ramirez** 23:13 24:5,17 30:3 **ranked** 35:5 | **reproduction** 11:2 **request** 5:17 50:4 **required** 10:14 **requirement** 18:13 23:4 |
| **offices** 2:11 3:4 7:2,11 20:22 **official** 21:4 32:13,21 33:3 | **phone** 27:4 36:19,21,22 **physiology** 11:2 | 34:2,4 35:15 **procedure** 49:14 **proceeding** | **read** 25:8 47:3 50:3,4 **reading** 49:11 **REASON** 50:7 | **resolver** 32:17 **resolving** 32:13,21 33:3 **resources** 8:3 |
| **Okay** 46:3 **operations** 26:5,12 **Opportunity** 32:16 | **picked** 38:7 39:1,5 **place** 20:17 **Plaintiff** 1:6 3:2 5:6 | 46:5 **process** 25:4 **program** 18:19 **programs** | **reasons** 16:14 16:15 50:5 **recall** 13:13 21:17 27:7,16 29:15 30:5,10 | 8:6 **respond** 5:19 40:22 43:10 **responded** 27:3 |
| **opposing** 49:13 **original** 49:10 49:13 50:6 | **please** 5:8 49:9 49:12,15 **point** 5:14 31:7 | 25:16,18 **promotion** 13:20 18:9,21 19:12 34:21 | 30:13 31:17 36:2,5 39:20 43:2,7,9 **receipt** 49:12 | **response** 5:18 5:20 31:19 32:2 40:17,21 44:1 |
| **outcome** 48:17 | 35:21 39:15 **pool** 38:1,2,9 **Port** 21:22 | **provide** 5:17 7:1,10,13,20 8:8,11,16,20 | **received** 27:4 28:12 30:17 32:10,21 | **responses** 25:10 **responsible** 49:11 |
| **P** **page** 4:2 49:10 49:13 | **Portals** 26:1 **position** 6:22 9:1,4 11:14 | **provided** 25:10 **Public** 2:22 48:1,19 | 33:17 35:22 36:4,15 **receiving** 6:8 | **retrieve** 37:12 **retrieved** 26:22 37:16 |
| **pages** 47:3 **PAGE/LINE** 50:7 | 12:5,7,15,17 14:5,11 15:7 15:13,15,18 | **pulled** 25:9 27:1 **Purdue** 9:13,21 | **recess** 35:11 **recollection** 44:22 | **return** 37:4 **returned** 39:7 **review** 28:8 |
| **panel** 23:16,19 23:21 24:1,2 24:6,10,11 26:17 28:4 | 16:5,10,22,22 17:4,7,11,15 17:17,18,20 18:3,5,6,19 | 10:8 **purpose** 33:10 **Pursuant** 2:21 **put** 32:15 | **record** 35:10 48:10 50:5 **reduced** 48:8 **referenced** | **ride** 37:20 **right** 20:18 35:1 **Rights** 32:16 |
| 29:16,20 30:1 35:17 **paperwork** 27:4 | 19:2,7,18 20:13 21:18 22:6,12,13,15 23:1,9 26:2 | **P-R-O-C-E-E-...** 5:1 **p.m** 2:6 41:20 42:1 43:1 | 40:11 43:5 **regarding** 49:11 **related** 48:11 | **Rock** 14:10 15:3 34:10 **Room** 3:15 49:3 |
| **parking** 37:17 **parties** 48:12 48:15 | 27:11 32:3,6 32:8 33:4,22 33:22 35:2,3 | 46:6 **Q** **question** 5:18 | **relation** 26:12 **relations** 7:17 **relative** 48:14 | **roughly** 34:17 **Russo** 1:21 2:21 48:2 |
| **Patrick** 1:15 2:9 4:2 5:2,9 47:2,10 49:10 50:2,19 | 35:7 43:6 44:11,13 45:5 45:8,22 | 6:3,5 10:16 23:7,20 43:17 45:9 | **repeat** 6:5 **replaced** 30:2 **report** 8:22 | |
| **Paul** 16:4 17:1 18:10,18 19:2 | | | | |

Patrick  Spalding

49:20

**S**

S 4:1
scheduled
  28:17
school 9:8,12
  10:3
schools 10:12
science 9:20
  10:15,19,20
sciences 11:1
second 24:6,22
  25:12 28:12
  28:19 29:3,5
  29:6,10,14,20
  30:6,8,15
  31:15 35:16
  36:3 45:11
secretary 1:8
  28:15
section 24:19
  25:14 30:4
Sederis 1:5
  3:22 5:11
selected 18:8
  25:7 30:4
selection 22:22
  33:3,21
separate 26:14
series 6:17,20
  17:11,14 18:2
  22:20 23:2
  27:22 33:22
  34:7,8 35:6
serve 18:14,20
  19:18 20:8
  23:5 33:2
served 19:6
  22:19 23:2
Service 6:15
sheet 47:7
  49:13 50:1,4
  50:6
short 35:10,11
shorthand 48:7

shuttle 37:20
signature
  49:10,13
  50:18
signed 47:7
  49:13 50:5
signing 49:11
similar 30:14
sir 11:13 15:2
  16:20 18:16
  20:14 27:15
Soloman 23:12
  24:4 30:2
sorry 17:7
  36:20
sounds 35:1
south 26:5,8
  26:14 38:12
Spalding 1:15
  2:9 4:2 5:2,9
  5:10 35:13
  47:2,10 49:10
  50:2,19
speak 30:20,22
  31:5,7 40:18
  41:1,2 42:15
  42:16,17
  43:12,19 44:3
  44:19
speaks 44:18
special 7:22
specialist 6:19
  17:7,9,10,18
  17:19 18:6
  19:22 20:9,15
  20:18,21 21:3
  21:5 22:8,13
  22:16
specialized
  32:5,8
specific 21:17
spoke 44:6,8
  44:10 45:2,10
  45:20,20
spouse 31:21
St 16:4,22

18:10,18 19:2
  19:8,17
staff 8:2 18:19
  32:16
staffing 7:16
  8:21
start 9:6 11:9
started 11:12
  13:15 22:8
  29:9
state 5:8
STATES 1:2
  3:12,21
stock 11:1
stop 25:12
  39:14
Street 3:13
  49:2
submitted 25:5
  27:4
Suite 2:13 3:6
supervisor
  11:16,17 12:8
  12:16,17
  13:12,21 14:3
  20:5 21:1,1,6
  21:8,11,13,16
  21:19,20 30:4
support 7:1,3
  7:10,19 8:16
supposed 37:4
sure 6:4 10:16
sworn 5:3 48:6
system 33:14
S-O-U-T-H 26:9

**T**

T 4:1,1
take 5:12,14
  11:4 13:3,8
  35:9 38:8,11
  38:14
taken 35:11
  48:3,7,13
  50:3
takes 38:17
  42:3

talk 40:15
talking 19:8
tell 5:3 29:22
  30:21 31:2
  44:19
ten 34:17,17
testified 5:5
testimony
  26:15 35:16
  47:4,5 48:4,6
  48:10
Thank 46:4
  49:16
thing 8:15
  27:13
think 5:13 8:14
  27:13 46:3
third 8:14
thought 19:1
  21:7
three 9:5,5
  13:19 20:10
  20:10 30:18
  31:18 33:7,7
  36:7,7,9
time 15:19
  21:15 25:5,15
  26:19 29:15
  31:6 37:19
  38:8 42:3,5
  46:4
times 21:17
title 6:16,19
  17:8 21:2,4,5
  22:17
today 5:12,13
told 19:1,10
  28:6,19,22
  29:1,7,19
  32:19 35:5
  40:15 43:21
  45:4,21
touch 28:10
tracking 33:13
train 32:17
trainee 14:7,9

14:15,21 34:7
training 32:5,8
  32:10,12,22
  33:8,9,11,15
  33:17,19
transcript
  49:11 50:3,7
transcription
  47:5 48:8
transfer 16:12
treatment 6:8
Treese 9:2
  23:13 24:8
  25:1 30:2
  35:17
trip 38:14
true 47:4 48:9
truth 5:3,4,4
truthfully 6:3
  6:10
trying 39:13
two 12:6 13:14
  14:4,12,12,15
  14:16,17,18
  14:19 15:1
  21:21 23:15
  26:13 28:10
  34:6 45:10
type 7:3,10,19
  10:14,17
  32:12

**U**

Uh-huh 14:22
understand
  5:21 23:20
  35:15 43:16
  45:9
UNITED 1:2
  3:12,21
universities
  10:12
university 9:13
  9:22 10:6,8,9
USDA 6:15
  11:7,9,12,15
  13:15,17

Patrick  Spalding

Page 56

| | | | |
|---|---|---|---|
| **use** 8:20 | **whatsoever** | 15:18 16:8,10 | **3** |
| **usually** 38:8 | 40:5 | 17:14 19:3,19 | **30** 41:9,16 42:5 |
| **U.S** 1:9 49:1 | **wife** 16:16 42:7 | 19:20 34:20 | 49:12 |
| | 42:9 43:13,19 | **11/12** 19:7 | **301** 6:18,21 |
| **V** | 44:18,20 | **1102** 17:12 | 22:16,20 23:2 |
| **vacancy** 25:8 | 45:20 | **1165** 18:4 | 33:22 35:6 |
| 25:13 27:1 | **witness** 36:10 | **12** 1:17 2:5 | **341** 17:16 34:7 |
| **van** 37:9,10,10 | 48:4,6,10 | 16:1,10 19:6 | 34:8 |
| 37:11,18 38:1 | 49:11 | 19:15,16,18 | |
| 38:2,9,16,17 | **work** 8:2,18 | 19:22 22:9 | **4** |
| 38:22 42:3 | 10:14,17 | 50:2 | **4** 38:16 |
| **verbal** 5:18,20 | 11:19 14:8 | **12/13** 18:20 | **4th** 3:13 49:2 |
| **Virginia** 38:21 | 15:9 16:3 | 19:13 | **4:00** 38:10 |
| **voice** 36:21 | 24:19 34:9 | **12:05** 2:6 | **45** 41:9,17 |
| 37:1,2,7 38:6 | 36:16,22 37:5 | **12:52** 46:6 | |
| 39:9 | 37:6 | **13** 18:6,21,22 | **5** |
| **voluntary** | **worked** 11:6 | 19:11,13,15 | **5** 4:3 12:1,16 |
| 16:12 | 13:17 34:4,13 | 22:10,20 | 12:22 |
| **vs** 1:7 49:6 | **working** 8:5 | **14** 6:18 23:1 | **5:00** 37:14,15 |
| 50:1 | 21:5 25:15 | 33:4,21 48:21 | 38:5 39:18 |
| | **workload** 7:6,7 | **15** 22:5 | 41:16 45:16 |
| **W** | 8:15,16 | **179873B** 1:22 | **555** 3:13 49:2 |
| **wait** 39:15 | **written** 40:4 | **1825** 2:12 3:5 | |
| **walk** 25:3 | | **1978** 10:1,4 | **6** |
| **walked** 26:20 | **Y** | **1982** 9:15 | **6** 41:18,19,22 |
| 42:6 | **yeah** 34:22 | **1983** 11:10 | 43:2 45:17 |
| **want** 44:16 | **year** 9:14 10:2 | **1986** 22:2 | **6:00** 41:17 |
| **wanted** 30:19 | 13:5,10,19 | **1987** 22:3 | 42:22 |
| 30:21 40:15 | 18:14,20 20:2 | **1991** 15:20 | **690** 2:13 3:6 |
| 40:18 46:2 | 22:11,19 23:5 | **1992** 15:20 | |
| **wants** 41:1 | **years** 9:5,9,21 | | **7** |
| **Washington** | 11:8 12:6 | **2** | **7** 12:20 13:2,4 |
| 1:16 2:14 3:7 | 13:15,19 14:4 | **20** 34:15 | |
| 3:16 17:21 | 14:13,15,17 | **2000** 20:4 | **8** |
| 19:9,10,14,21 | 14:18,19 15:1 | **20009** 2:14 3:7 | **82** 10:1 11:11 |
| 20:3,6,16 | 17:5 20:10,11 | **2003** 9:6,7 | **83** 11:12 |
| 22:9 26:1 | 21:21 22:5 | **2007** 1:17 2:5 | |
| 49:3 | 34:20 | 50:2 | **9** |
| **way** 5:20 36:18 | | **2010** 48:21 | **9** 12:20 13:7 |
| **week** 28:10 | **0** | **202-514-7250** | **91** 15:21 34:12 |
| 30:17 31:18 | **06-0538(HHK)** | 3:17 | 34:15 |
| 36:13 | 1:8 | **202-785-2805** | **92** 15:21 34:12 |
| **went** 27:9,14 | | 3:8 | 34:15 |
| **westerner** | **1** | **20530** 3:16 | |
| 16:18 | **10** 34:20 | 49:3 | |
| **westerners** | **11** 12:18 13:12 | **23** 11:8 | |
| 16:17 | 13:18 15:14 | | |