# Attachment I

# COMPLAINANT'S AFFIDAVIT

I, Sederis Fields am an employee of the U.S. Department of Agriculture:

Agency: U. S. Department of Agriculture

Office:   Farm Service Agency

Division: Deputy Administrator for Field Operations

Branch: Field Operations Staff

Located: Washington, D.C.

Grade: GS-13 between 1997 to Present.

My telephone number during working hours is (202) 720-7552.

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator, who has been assigned to conduct a thorough and impartial investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record, which is true and complete to the best of my knowledge, and belief and which fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information, which is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, my Formal Complaint, and the description of the issue(s) for investigation shall serve as the basis for the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts, which substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

CRC Form 10
(Rev. 9/01)

SWF
(Initials)

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Agriculture. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly Sederis Fields swear affirm that the statement, which follows, is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

CRC Form 10
(Rev. 9/01)

*SWF*

(Initials) 10

On July 27, 2004, at approximately 12:00 p.m., EEO Investigator Amy Risley interviewed Sederis Fields regarding her EEO complaint against the Farm Service Agency, complaint number 040175.

1. Please state and spell your name for the record.

Answer: Sederis Fields.

2. What is your current position and location? Please describe your current duties.

Answer: My position is Program Coordination Specialist in the Deputy Administrator for Field Operations office, Farm Service Agency. My position is administrative. I serve as a liaison between Headquarters and State and field offices on administrative issues regarding Personnel, Alternative Dispute Resolution/Mediation, Student Employment Programs, EEO/Civil Rights, administrative services, and the Consent Decree Budget. Serve as an Agency Resolving Official for Mediation. Also, conduct Misconduct Personnel Investigations in the field offices.

Work with the Outreach Staff to plan and coordinate outreach initiatives with State and county offices to improve FSA program delivery to minority farmers ranchers, low-income and underserved customers.

At the time of the non-selection, Mr. Frago was my supervisor. Prior to that, my supervisor was John Chott. Currently, Linda Treese is my supervisor.

3. What is your current grade and step? How long have you been in this position?
Answer: GS-301-13- step 7. I have been in this position since January of 1999.

4. How long have you worked for the Farm Service Agency?
Answer: For more than 20 years, here at headquarters.

5. What is your race?
Answer: African American.

6. What is your sex?
Answer: Female.

_SWF_
(Initials)

7. The issue accepted for investigation is whether you were discriminated against based on your race and sex when you were not selected for a GS-14 Administrative Management Specialist position on July 21, 2003. I would like to ask you some questions regard the selection process and why you believe you were discriminated against. Were you rated as qualified for this position? If yes, were you referred for consideration?

Answer: I applied for this position and I was rated best qualified and referred to the selecting official.

8. Were you interviewed for this position? Who interviewed you?

Answer: Yes, in fact there were two interviews. The first interview panel included Doug Frago, my first line supervisor, who was also the selecting official, John Chott, second line supervisor, Solomon Ramirez, Assistant Deputy Administrator for Farm Programs and Sean Clayton, EEO Observer. My first interview was on July 8, 2003. The second interview panel included Doug Frago, John Chott and Linda Treese. This panel did not include an EEO observer. They were interviewing for two GS-301 positions.

9. What happened in the interview?

Answer: All the panel members asked individual questions. I felt like it went well, in fact, Mr. Chott came to my office after the interview and told me that I did well in the interview. I was then notified on or about July 11, 2003, that I made the top five candidates, and there would be a second interview. This interview was conducted on July 21, 2003. The interview panel at that time included Doug Frago, John Chott, and Linda Treese. The EEO Observer was excluded from the second interview, which violates the Merit Promotion Process. Although these positions were non-supervisory positions, the Merit Promotion Process provides instructions to the agency regarding interview panels. In addition, it is unusual to change the interview panel in the middle of the selection process this gives an appearance of an impropriety. I felt that I answered the questions well.

SWF
(Initials) 12

FSA Notice PM 2334, Merit Promotion Process, Section 2E, dated October 1, 2002, with disposal date October 1, 2003, states "Interview panels are not mandatory for non-supervisory panels". However, all interview panels shall include an EEO representative or member of the CR/EEO Advisory Council as an observer. This can be found attached to my affidavit identified as Exhibit 2. Also attached is Exhibit 1 which is a comparative analysis of the two successful selectees along with the complainant.

10. What happened after you were interviewed the second time?

Answer: I was interviewed at 1:00 p.m and around 4:30 p.m., Doug Frago came to my office and informed me I was not selected because I did not have enough administrative experience. I disagree with this because my position is in the Administrative 301 series. The two people who were selected were in Agricultural Program areas, which made me more qualified. I feel that the second interviews were not necessary and were a pretext to weed out whom they did not want to select. The whole interview process appeared to be tainted.

I felt that Mr. Frago and John Chott were trying to influence the panel by sitting on it instead of having a separate panel give them recommendations. I thought it was unusual for the selecting official to sit on the interview panel.

11. Do you know who was selected?

Answer: Yes, Ken Nagel, and Patrick Spalding. They are both white males.

12. Do you feel you should have been selected over Mr. Nagel?

Answer: Yes. I have a wealth of experience in the administrative area, thus making me better qualified for this position. I have been performing administrative duties for over 20 years in FSA. I received a Performance Bonus (QSI) effective December 1, 2002 (FY 03), for outstanding performance in the administrative areas. Furthermore, since I have been on this staff, I received two cash awards and two QSI for outstanding performance. They rated me outstanding on my performance appraisals. My job series is a GS-301 which is administrative. Mr. Nagel job series is a GS-1145 which is program area. In order for him to qualify, he had to work outside of his job description. He was assigned duties no one else was assigned, which gave him an unfair advantage in the selection process. DAFO has always been divided in two areas the GS-301

*SWF*

(Initials) 13

series handle the administrative area and the GS-1145 handle the program area. Mr. Nagel was hired in 1999, as a career conditional employee to work in the program area in DAFO. . In his previous job in the county office, he was a non-federal employee at the CO-12 level.

When the position was advertised, everyone knew that position was for Mr. Negal. He was targeted for that position, by giving him an accretion of duties.

They added duties and responsibility of a GS-301-14 to his job so that he would qualify for the administrative series position, although he was only performing these duties for a short amount of time prior to the selection. This is obviously a violation of the Merit Promotion Plan.

He is very close with John Chott and Doug Frago, in fact, the other coworkers complained about him being in their office all the time and accompanying them in most of their meetings. They would have him Acting for them as much as possible even over the GS-14. I can recall around September 2002, at least four coworkers complained to Mr. Frago about favoritism toward Ken subsequently, Mr. Frago than started to rotate the acting capacity.

He is a white male and is buddy-buddy with Mr. Frago and Mr. Chott which is sometimes call the "Good Old Boy Network". Again, this is a good example of improper selection because he was not the best-qualified candidate.

The record reflects that the complainant was better qualified for the competitive promotion, vacancy identification number UF168394CT. It is revealed that Mr. Nagel has been slowly taking on new duties and responsibilities.

See USDA Notice AO-1175, EDSO Program Assignments dated October 2, 1998, list the Agricultural Program Specialist GS-1145-13 vacant position, identified as Exhibit 3.

Notice AO-1193, EDSO Program Assignments dated May 28, 1999, will show you the duties and responsibilities Ken was hired to perform in 1999 as an Agricultural Program Specialist GS-1145-13, identified as Exhibit 3a. Notice AO-1225, dated August 11, 2000, list the Agricultural Program Specialist GS-1145-13 following program duties and responsibilities. A careful review of the record fails to denote any legal change in Mr. Nagel's official position description during this period, identified as Exhibit 3b. However, a further review of USDA, AO Notice dated April 2003 reflects a noticeable increase in Mr. Nagel's duties and responsibilities to the point where his position now justifies a higher grade, identified as Exhibit 3c.

SWF

(Initials) 14

This is called an accretion of duties policy. When accretion of duties becomes the normal method by which Mr. Nagel was promoted, such a policy is a pretext for discrimination. A promotion by accretion of duties: a way around merit promotion procedures: his promotion was announced as a competitive promotion under the Merit Promotion plan but clearly contravenes the plan. Mr. Nagel was targeted for higher graded duties to set up an accretion of duties promotion.

13. Can you please describe why you believe you were better qualified than Pat Spalding?

Answer: Yes, I am better qualified than Pat Spalding, and records will reflect he was unqualified for this position. In March 2000, Pat Spalding was a GS-1165-11, Agricultural Loan Specialist. That would be a quick progression to a GS-301-14 in 2003. I am not familiar with his performance, but according to the job announcement administrative duties had to be performed at least one year in the next lower grade level. That means he needed one year experience in an administrative series at the GS-13 level to qualify. His position was in the Ag. Program area, so I do not understand how he was better qualified than I am. In addition, he was working in the Farm Loan Division, therefore he would need a lot more training than someone already in the office would have needed, such as me. In addition, most of Mr. Spaulding's experience was gained in another Agency (Farmer's Home Administration).

14. Please describe the duties of the position.

Answer: The duties of this position are to provide guidance to FSA State and county offices on issues relating to personnel, budget, EEO/CR, and administrative management. Representing DAFO in meeting relating to State and county offices functions.

15. Did you speak to anyone about why you were not selected?

Answer: I had a meeting with Mr. Frago and Mr. Chott the following day, July 22, 2003. During that meeting, Mr. Frago said again that I did not have enough administrative experience. I felt like that was an excuse. He had to say something. I did not inquire further as to what he meant by that. Since I have worked in this Agency for more than 20 years, most managers, coworkers, and general employees who are aware of my competency expressed regrets, and assure me that they did not feel this was a fair selection.

*SWF*

(Initials) 15

16. Why do you believe your not being selected was based on your race?

Answer: Because they hired two white males with less administrative experience than what I have. One was obviously targeted by given assignments that were not made available to other employees therefore providing an unfair advantage. The other white male appears to be unqualified for the position.

In addition, I believe this was based on race because DAFO announced six vacant professional (GS-13, 14, 15) positions in 2003, and they were all filled by white applicants. This presents an adverse impact on minorities. I know there were several minorities that applied and were interviewed for these positions. Mr. Frago was the selecting official for four of them and Linda Treese was the selecting official for the other two.

17. Why do you believe your not being selected was based on your sex?

Answer: Because obviously two white males was selected and I am a Black Female that is better qualified. One was less qualified and one was unqualified. Again, this is a good example of the "Good Old Boy Network in FSA".

18. Do you have anything further you would like to add regarding your claim?

Answer: Under the Collective Bargaining Agreement between AFSCME and FSA Article 9, relevant to Position Descriptions states, "when there is a significant change in an employee's duties and responsibilities for a period to exceed (30) days, the employee shall be provided an accurate, and updated Position Description within (5) working days". We are all under the Collective Bargaining Agreement as GS-13s. Therefore, when they added additional GS-14 duties to Ken Nagel's position, they should have changed his position description.

19. What relief are you seeking?

Answer: I would like a retroactive promotion for the GS-14 position, compensatory damages, a letter of apology, and management to refrain from retaliatory actions and reprisal.

_SWF_

(Initials) 16

20. Do you have any witnesses you would like for me to speak with?

Answer: Yes, Cliff Herron, GS-15, Phone No. (202) 720-7619; Mike Hill, GS-15, and Star Bryant, GS-14, (202) 720-0183. They can corroborate accretion of duties and favoritism in assignments. In addition, they corroborate that Ken was assigned to act over them even though he was in a lower grade. In addition, it is against regulations for a GS-13 to act over GS-14 and 15. Ron Hollings GS-15, Phone no.: (202) 720-8530, can witness his knowledge of Mr. Nagel additional duties and responsible assignments before he was promoted. Sean Clayton, EEO Observer can witness that it is a past practice that an EEO Observer is mandatory for all interview panels. Please interview the recommended witnesses.

21. Anything further?

It would appear that the agency has displayed some discriminatory conduct in the selection process, and violated the spirit and intent of Merit Promotion Plan. The Complainant was treated differently from similarly situated employees not in protected group. One was in the same chain of command, and same work unit. Two white males who were not members of complainants' protected group and less qualified than the complainant filled the vacancies. The records reflect that Mr. Spaulding was unqualified and Mr. Nagel was less qualified than the complainant.

I have reviewed this statement, which consists of 8 pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

*Sederis M. Fields*
(Signature of Deponent)

*August 3, 2004*
(Date)

*Received via certified mail*
~~Signed~~ before me at (Street and City)

on this 11th day of August, 20 04

(Signature of Investigator/Witness)

CRC Form 10
(Rev. 9/01)2

(Initials) 17

# Rebuttal Statement
Case Number USDA CR 040175

The following is the rebuttal statement provided by the complainant in response to management's testimony.

1. Mr. Frago states that it never occurred to him that he would not be included in the interview panel. Human Resources confirmed that the selecting official may sit in on the interview panel and participate in any part of the selection process. Do you have a response to this information?

**Answer:** Mr. Frago states it never occurred to him that he would not be included on the interview panel is a diametrically opposed position to what he had done just a week prior to the July 8, 2003, interview. When the interview panel convened to select the GS-301-15 position a week before to which Mr. Frago was the immediate supervisor, and the selecting official, he was not a member of the interview panel, which would have been more logical. Apparently, it occurred to him not to be included on the GS-301-15 panel. In addition, it is uncommon and against past practice for a selecting official to sit on the interview panels due to the appearance of impropriety.

2. Mr. Frago states that the interview panel changed for the second round of interviews because Linda Treese had just been selected for her position. Since she would supervise those positions, he wanted her to meet the candidates. Human Resources confirmed that it is appropriate to change the interview panel members in a second round of interviews. Do you have a response to this information?

**Answer:** The record needs to be corrected with respect to the second round of interviews. There were two distinct interviews conducted on July 8, 2003, and July 21, 2003, respectively. Mr. Frago's methods are full of inconsistencies. He contends that he replaced a Panel Member in the second interview with Linda Treese, because she would supervise the positions in question, since Mr. Frago was the selecting official it would appear that he possessed the authority to delay the GS-14's interviews until Linda Treese could participate rather than change panel members. Also, Mr. Frago states that Human Resources confirmed that selecting officials may sit on interview panels. However, Mr. Frago was the selecting official for the GS-301-15, position in which Linda Treese was selected, but evidence of record reveals he was not a panelist on said interview panel, but is Linda Treese's supervisor. In addition, it is unusual to change the interview panel in the middle of the selection process; this gives an appearance of an impropriety.

3. Mr. Frago states that he sought the guidance of Human Resources with regard to the interview process and that they were told they did not need an EEO Observer in the second round of interviews. Carolyn Taylor, the Human Resource Specialist assigned to the vacancies at issue in your complaint, confirmed that this was the guidance she gave them and that it was based on the Personnel Operations Manual, Amendment 8 dated May of 2003. Do you have a response to this information?

**Answer:** Mr. Frago states that Human Resources advised him that he did not need an EEO Observers in the second interview. However, as previously stated, there were two separate interviews consisting of different panelist on each, and the first interview panel had an EEO observer. He was not being consistent by not having an Observer on the second panel.

Merit Promotion Process Notice PM-2334 with disposal date October 1, 2003, states in pertinent part, "Interview Panels are not mandatory for non-supervisory positions, interview panels shall include an EEO Representative or a member of the CR/EEO Advisory Council as an observer for all interview panels, herewith enclosed identified as Exhibit #A. There is no evidence of record that stated this notice was repealed, thus it was in effect during the considered period. Mr. Frago's contention was corroborated by Carolyn Taylor, Human Resources Specialist based on Personnel Operations Manual Amendment 8 dated May 2003. You are reminded that the Personnel Operations 3 PM (Revision 3) Amendment 8, is in reality a amendment to a handbook published May 7, 2003, herewith enclosed identified as Exhibit #B. Amendment 8 was transmitted to Merit Promotion Process Notice PM-2388 with effective date November 14, 2003, herewith enclosed identified as Exhibit #C. Thus, Mr. Frago's contention was corroborated by evidence not yet in effect.

4. All of the interview panelists stated that they scored each applicant during the interview based on the responses to the questions and based on the resumes. They stated that they were looking for candidates with a broad range of experience in administrative areas such as staffing, monitoring and developing budgets, workload issues, leasing of office space and property management, and some EEO issues because those are the areas in which the field offices need guidance. Do you have a response to this information?

**Answer:** The Merit Promotion Process Notice PM-2334, Section E, states that interview panels shall: use standardized questions, based on the position description, and reflecting management and technical area. Again, I felt that Mr. Frago and Mr. Chott influenced the panel by sitting on it instead of having a separate panel give them recommendations

2   19

All of the interview panelists stated that they scored each applicant during the interview based on the responses to questions and based on the resumes. Since there were different panelists on the two different interview panels, all of the panelist could not score each applicant during an interview. Additionally, the panelist's questions did not conform to the requirements of Notice PM-2334 or the vacancy announcement.

The interview panelists stated that they were looking for candidates with a broad range of experience in administrative such as staffing, monitoring, and developing budgets, workload issues. These duties happened to be Mr. Berge (GS-301-14) duties. He was reassigned out of this section and Mr. Chott assigned Mr. Nagel his duties,. At that time, there were five other GS-13's and one GS-301-14 on the staff. Mr. Nagel was hired to work in the program area not the administrative area.

According to the Vacancy Announcement and the OPM Qualification Standards for General Schedule Position it appears that neither one of the selectees were qualified for these position unless they worked outside of their current job description. For specialized experience candidates must have 1-year in the next lower grade level. Mr. Nagel was an Agricultural Program Specialist GS-1145-13 and Pat Spaulding was an Loan Specialist GS-1165-13. So how did they acquire this specialized experience in the GS-301 Administrative area?

5. The interview panelists also stated that they selected the two individuals with the highest scores from the second round of interviews. Specifically, they stated that with regard to Mr. Nagel, he was the highest scorer out of all of the candidates. They stated that he had a wide range of experience in banking, farming, leasing, personnel management, budgeting, and that because he had been a manager in a state office; he was well qualified to be able to advise those in the field. They said that you, however, were narrow in your experience and that although you perform well in your current position, you were not as well qualified as Mr. Nagel to handle the types of issues the position requires.
Do you have a response to this information?

**Answer:** If the interview panelists selected the two highest scores from the second round of interviews, who was seleced with the highest scores in the first interview, which was conducted on July 8, 2003, and participants were advised that they would be notified of the results in two weeks. Since the second panel had a different member than was on the first panel, did both panels view Mr. Nagel's wide range of experience in his non-federal employment relevant to the position he applied for. The panelist had to ignore the fact Mr. Nagels's application failed to meet time-in-grade requirements. Mr. Nagel job series is a GS-1145 which is program area.

In order for him to qualify, he had to work outside of his job description. He was assigned duties no one else was assigned, which gave him an unfair advantage in the selection process. DAFO has always been divided in two areas the GS-301 series handling the administrative area and the GS-1145 series handle the program area. Mr. Nagel was hired in 1999, as a career conditional employee to work in the program area in DAFO. In his previous job in the county office, he was a non-federal employee at the CO-12 level.

4. Mr. Frago stated that he looked at Mr. Nagel's overall resume and not the duties he performed in the office in his former position or when he was in an acting capacity. He also stated that he rotates the individual who is assigned to act when he and Mr. Chott are out of the office. Do you have a response?

**Answer:** Mr. Frago states that he reviewed Mr. Nagel's overall resume, thus making it impossible to omit the accretion of duties that he listed in his application which were not included in his Agricultural Program Specialist position GS-1145-13. Further, Mr. Frago only started rotating the acting capacity subsequent to a complaint to higher management. Please interview the recommended witnesses.

5. Mr. Chott stated that although it was not required for the position, the fact that Mr. Nagel had previously served as a county director made him an ideal candidate due to the duties of the position. Do you have a response?

**Answer:** It would appear that Mr. Chott freely exhibited his preselection tendencies about Mr. Nagel having served as a county director. You are reminded that this was a non-federal position and certainly at a level lower than the next lower grade of the vacancy. There is no nexus between a CED and a GS-301.

6. Mr. Frago and the interview panelists also stated that with regard to Mr. Spalding, his experience as an Assistant Administrative Officer made him a good candidate because he had held the position that their office deals with all the time. They stated his background in the farm loan program was helpful to the position as well. They stated he had experience in leasing, contracting, and that his experience in having consolidated some field offices was particularly helpful because that is an issue they are facing right now. Do you have a response to this information?

**Answer:** Mr. Frago and the interview panelist stated that Mr. Spalding's experience as an Assistant Administrative officer made him a good candidate. Since Mr. Spalding was an Agricultural Loan Specialist GS-1165-13 in 2002, he must have gained his administrative officer's experience at a lower level. These considerations of Mr. Spaulding's abilities had to be gathered from

factors outside of his qualifications as Mr. Spaulding served as an assistant administrative officer for less than 1 year. In addition, as an Agricultural Loan Specialist for a brief period neither position provided the required experience for the next lower level to the position he was promoted in.

Records will reflect that Mr. Spalding was unqualified for this position. In March 2000, Pat Spalding was a GS-1165-11, Agricultural Loan Specialist. That would be a quick progression to a GS-301-14 in 2003. Administrative duties had to be performed at least one year in the next lower grade level. That means he needed one-year experience in an administrative series at the GS-13 level to qualify. Most of Mr. Spaulding's experience was gained in another Agency (Farmer's Home Administration).

7. The interview panelists all stated that they scored each candidate during their interview based on the interview responses. They recalled that you did not interview as well as the two selected. They used as an example the question they asked each candidate to describe an accomplishment. They stated that you recalled your assistance with the Christmas party and your getting awards letters out on short notice. They stated that they were looking for higher-level/leadership type of answers. Do you have a response to this information?

   **Answer:** Again, we have all of the Interview panelists stating that they scored the complainant is particular responses at an interview which means that members of both panels were present at all interview for all to recall that complainant did not interview as well as the two selected. It is a unique situation that all of the interview panelist recalls my responses. Maybe there is a reason for this. However, I do feel that my responses were adequately addressed to the questions, and the example they recalled could be attributed to Disparate treatment. Is this why they choose not to have an EEO Observer on the panel?

   For the record, my answer was taken out of context and was partially stated I am appalled that they would stoop that low to try to discredit me. I can recall that question on the second interview. They asked the question regarding ability to work as a team member. It is ironic that none of the panel members remembers me stating the following from the questions. That, I currently represent DAFO on several committees such as the Employee Recognition Committee, the Disability Awareness Committee, and the National Civil Rights Advisory Committee. I have a reputation for not missing meeting. In fact, I plan my leave around my monthly meeting. In addition, I am constantly pursued to serve on panels and taskforce not only in FSA but also throughout the Department because of my dependability and commitment. Most committees' members view me as a resourceful person, because of my institutional and historical knowledge of USDA. I also mention that I have served as a team member in writing policy and guidelines and handbooks. I mentioned that one of the most recent accomplishments was

rewriting the Merit Promotion Policy while serving on the National CR Advisory Committee. I conducted several Personnel Misconduct Investigation. I have total knowledge of how the State and county offices operates because I deal with them on a daily basis not only in my current position. But in my previously position were I conducted On-site Management Reviews in most of the States and county offices

The Administrator's Annual Xmas Party was a small example of working as a team. If this is the kind of things they use to screen candidates out I can understand why they announced six vacant professional (GS-13, 14, 15) positions in 2003, and justified filling them with all white applicants. This can present an adverse impact on minorities.

8. Mr. Chott denies that he is friendly with Mr. Nagel and states that he does not socialize with anyone from the office. All of the interview panelists deny that either of the candidates were pre-selected. Do you have additional information?

**Answer:** Maybe Mr. Chott does not consider his relations with Mr. Nagel to be friendly; however, I do feel that there are several other opinions about their friendship. Additionally all interview panelists could not deny that either of the candidates were preselected from the compliments and praise given to both candidate by Mr. Frago and Mr. Chott.

9. Mr. Chott states that with regard to your claim that Mr. Nagel was given an accretion of duties and that made him better qualified for the position at issue, he believes that to be false. He states that when Chuck Berge left, Mr. Nagel was given some of Berge's assignments because they worked closely together. He states it was his understanding that Mr. Nagel just ended up doing more of what he was already doing at that point. Do you have additional information?

**Answer:** In Mr. Chott's confession and avoidance, he makes an admission that Mr. Nagel was given an accretion of duties. However, the commission has noted that such a policy can be an absolute subjective one since the Agency is free to decide which employees will absorb the new duties. When this is done in a competitive promotion, such is pretext for discrimination.

In addition, under the Collective Bargaining Agreement between AFSCME and FSA Article 9, relevant to Position Descriptions states, "when there is a significant change in an employee's duties and responsibilities for a period to exceed (30) days, the employee shall be provided an accurate, and updated Position Description within (5) working days". We are all under the Collective Bargaining Agreement as GS-13s. Therefore, when they added

additional GS-14 duties to Ken Nagel's position, they should have changed his position description.

It would appear that the Agency has displayed some discriminatory conduct in the selection process, and violated the spirit and intent of the Merit Promotion Plan. I was treated differently from similarly situated employees not in my protected group. One was in the same chain of command, and same work unit. The two vacant positions were filled with two white males who were less qualified than me and not members of my protected group.

I have reviewed this statement, which consists of ____ pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_Lesley M. Field_          _August 9, 2004_
(Signature)                             (Date)

Received by me
~~Signed before me at~~ (Street and City)

on this 19th day of _August_, 20 04

_____
(Signature of Investigator/Witness)

7 24