# Attachment L

# WITNESS AFFIDAVIT

I, Carolyn_Taylor am an employee of the:

(Agency) U. S. Department of Agriculture

(Office) Farm Service Agency

(Division) Human Resources Division

(Branch) Domestic Operations Branch

Located in (city and state) Washington, D. C.

In the capacity of Human Resources Specialist

Grade -12 between 12/16/90 and 8/2/04

My telephone number during working hours is: (202) 418-8996

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and Department of Agriculture policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Agriculture. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and Department of Agriculture policy. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X__ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.


Initials

The following information was gathered during an in-person interview on July 27, 2004 in the offices of Human Resources, Farm Service Agency.

1. Please state and spell your name for the record.
Answer: Carolyn Taylor.

2. What is your current position and location?
Answer: I am a Human Resources Specialist with the Human Resources Division, Domestic Operations Branch.

3. What is your current grade?
Answer: I am a GS-12.

4. How long have you worked for the Farm Service Agency?
Answer: I have worked in staffing for 25 years. I have worked for the USDA for 40 years (servicing various sub-agencies within USDA).

5. What is your race?
Answer: White.

6. What is your sex?
Answer: Female.

7. Do you know Ms. Fields? How do you know her?
Answer: I only know her through this case. I sat in on a mediation in reference to her claim. I I was not present during her interview for the GS-14 Administrative Management Specialist position.

8. The issue accepted for investigation is as follows:
*Whether the complainant was discriminated against based on her race (black) and sex (female) when she was not selected for a GS-14 Administrative Management Specialist Position on July 21,*



2
68

Initials

*2003. (Two individuals were selected.)*

Were you involved in this selection process? How were you involved?

Answer: I was responsible for announcing the position, reviewing the applications to determine eligibility and verify qualifications based on the applicants entry of information in the automated system, which generates the scores based on applicants entry, and issuing the certificate. I also determined the cut-off score as to who would be considered best qualified to be referred to the selecting official for consideration.

There were 23 competitive applicants who were found qualified and 13 of those were referred. There were also two applicants on the non-competitive list, individuals who had already held the GS-14 grade level. The average score of the competitive applicants was 97.6 and I referred applicants with a score of 99 and above to be best qualified. Ten of the competitive applicants referred had a score of 100 and three applicants had a 99.

9. Can you explain the selection process used for this position? Is that the normal process used for this type of a position?

Answer: After I provided the selecting official with the referral certificate, they had 90 days to make a decision. Based on information provided when the certificates were returned, all of the candidates referred were interviewed, except for two candidates who withdrew their applications. I do not recall getting facts about the interview process or if they had a second interview. I do not recall specifically if I was asked the question, but if I had been asked about whether a Civil Rights Observer needed to be present during the second round of interviews, I would have told them they did not need one. This was in accordance with FSA policy in effect at the time of these interviews, July of 2003. Specifically, in the Personnel Operations Manual under the panel interview process, Amendment 8 dated May of 2003 and PM Notice 2334. Again, my guidance would have been to have an observer in the first round interviews, but that it would not be necessary for the second round of interviews. Also, with regard to Mr. Frago being on the interview panel, that is also allowed. He may be a part of the interview process from the beginning or he may choose to only conduct a second interview. This process of having two sets of interviews was not unusual for a GS-14 position. I was not involved in deciding who would be on the panel, nor was I involved in conducting the interviews.

They notified me as to who they had selected and asked me for a starting date, especially since one individual was not in the same office. I let the selecting official make the job offer. I recommended that they notify the interviewees personally and then I notified all applicants in writing that they were not selected.

10. The complainant alleges that she had far more administrative experience and questioned how the individuals selected were found qualified. Can you please review the two selectees' applications and talk me through how they were determined to be qualified for the position.

Answer: This position deals with state and county Farm Service Agency offices and guides them on procedures and policies. You need someone who can give guidance to the field as a headquarters position.

Mr. Nagel had served as a point of contact and liaison for field and state offices. Everything he was doing was relevant such as budgeting, staffing, personnel, hiring, ethics, and other administrative functions. I have no hesitation in stating that he was qualified for the position. I have no knowledge of how he was assigned his duties in his current position. I had not previously serviced that office.

With regard to Mr. Spalding, his qualifications include a lot of operating policy and plans. He had trained field personnel and responded to inquiries from the field. He worked with policy and legislative changes for farm loan policy and programs. He had experience in travel and procurement. In reviewing his application, I would also qualify him without hesitation.

The fact that Mr. Spalding and Mr. Nagel were working in positions that were in a different series, not a 301 position, had no bearing on whether they were qualified for the position.

11. Did the complainant ever discuss her being upset about not being selected for this position with you? What did she say? What did you do in response?

Answer: I do not recall Ms. Fields ever asking me why she was not selected and I do not have a written request in my file.

12. The complainant alleges that she was not selected based on her race. Do you have any information that may lend support to her claim?

Answer: I have no information that she was discriminated against based on her race.

13. The complainant alleges that she was not selected based on her sex. Do you have any information that may lend support to her claim?

Answer: I have no information that she was discriminated against based on her sex.

14. Do you have any further information regarding Ms. Fields' allegations?

Answer: No.

I have reviewed this statement, which consists of _5_ pages, and hereby solemnly swear _X_ affirm ____ that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____Carolyn Taylor_____          _____8/2/04_____
(Signature of Affiant)                              (Date)

Signed before me at (Street and City): Washington, D. C.

on this 2nd day of August, 2004

_____Catherine M. Rogers_____
(Signature of Investigator/Witness)

5

Initials