THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SEDERIS FIELDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0538(HHK) |
| | ) | |
| **ED SCHAFER**, Secretary, | ) | |
| U.S. Department of Agriculture, | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S
### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COMES NOW the United States Department of Agriculture (hereafter "Defendant" or "the Agency") in Reply to Sederis Fields' (hereafter "Plaintiff") Opposition to Defendant's Motion for Summary Judgment.

In reply, Defendant maintains that it did not discriminate against Plaintiff because of her gender or race with regard to the selections it made for the two (2) Administrative Management Specialist (AMS) vacancies. The record unequivocally shows that Defendant selected the two (2) better qualified individuals for the two (2) vacant AMS positions. The selectees (Ken Nagel (hereafter "Nagel") and Pat Spalding (hereafter "Spalding")) had a broad range of experience including the areas of administration, policy, programs, farming, and agriculture, unlike Plaintiff, whose experience was limited to areas of Equal Employment Opportunity (EEO) and Civil Rights. Thus, Defendant's Motion for Summary Judgment should be granted.

**I.   PLAINTIFF'S OPPOSITION DOES NOT AVER ANY GENUINE ISSUES OF MATERIAL FACT.**

Plaintiff claims that she disputes several of the material facts Defendant lists in its Motion for Summary Judgment (hereafter "Defendant's Motion"), but Defendant maintains that Plaintiff's arguments are actually immaterial to the issues of the Complaint. Plaintiff's arguments in her Opposition to Defendant's Motion for Summary Judgment (hereafter "Plaintiff's Opposition" or "Opposition") fail to directly address or refute Defendant's list of material facts. Rather, Plaintiff attempts to distract the court by making arguments regarding *immaterial* facts that were not listed in Defendant's Motion. Defendant, nonetheless, addresses Plaintiff's arguments *infra*.

Plaintiff having failed to refute Defendant's statement of material facts, Defendant requests that this court treat the list of "material facts not in genuine issue" within Defendant's Motion as conceded. See LCvR 7(h) & 56.1

**A.   There is No Genuine Issue of Material Fact Regarding Plaintiff's or the Selectees' Qualifications; the Selectees are Better Qualified for the Administrative Management Specialist Positions than Plaintiff.**

Plaintiff makes exaggerated statements that are not supported by—and directly contradict—the record. Plaintiff alleges that she is "vastly better qualified" than the two (2) selectees and that she has "superior qualifications."

**1. The Selectees are better qualified than Plaintiff with regard to relevant experience.**

Despite Plaintiff's embellished and boastful statements in her Opposition, the record is clear with regard to the extent of her qualifications. Plaintiff had twelve (12) years of secretarial experience, eleven (11) years of civil rights experience, and four (4)

years of program coordination specialist experience[1] (Docket No. 29, Attachments M and N – Fields Application).

In comparison, selectee Nagel had nineteen (19) years of farming experience, four (4) years of agricultural loan banking experience, eight (8) years of county office administration and management experience (in three (3) counties), and four (4) years of agricultural program specialist experience (Docket No. 29, Attachment B- Nagel Application).

Selectee Spalding had five (5) years of county office management and agricultural loan experience, twelve (12) years of state office management and agricultural contract experience, and three (3) years of agricultural loan specialist experience (Docket No. 29, Attachment C - Spalding Application).

In short, *the selectees had decades of administrative, programmatic, management, and agricultural loan experience at the state and/or county office levels as well as at the national level.* (Docket No. 29, Attachments B and C – Nagel and Spalding Applications). *Plaintiff did not.* (Docket No. 29, Attachments M and N - Fields Application). Rather, Plaintiff had decades of secretarial and civil rights experience, with only minimal programmatic experience. *Id*.

The selecting official, Doug Frago, clearly articulated these differences (Docket No. 29, Attachment J - Frago Affidavit, pp.101-102). Thus, the differences between Plaintiff and the two (2) selectees were stark, and made an impression on the selecting official. *Id*.

## 2. The Selectees are better qualified than Plaintiff with regard to formal education.[2]

In her application for the position at issue, *Plaintiff misrepresented that she has a Bachelor's degree* (Docket No. 29, Attachment E - Fields Deposition, February 22, 2007,

---

[1]     When Plaintiff sets forth her experience in her Opposition, she lists "…Human Resources, Equal Employment Opportunity (EEO), Civil Rights, Alternative Dispute Resolution (Mediation) and the Consent Decree Budget." Opposition at 3.

[2]     The record does not suggest that the selecting official knew that Plaintiff's application was inaccurate regarding her educational qualifications.

3

p. 13, lns. 3-4; p. 104, lns. 2-4). The selectees had Bachelor's degrees, but Plaintiff did not. (*Id.*; Docket No. 29, Attachment B – Nagel Application; Attachment C – Spalding Application; Attachments M and N - Fields Application).

In her Opposition, Plaintiff does not dispute that *she does not have a Bachelor's degree*; rather, she attempts to justify the false statement in her application by emphasizing that she did not list a date on which she received the (fabricated) degree. Opposition at 9-10. Plaintiff's excuse fails to create a genuine issue of material fact with regard to the educational attributes of the candidates because her lack of a Bachelor's degree is not disputed. Although Plaintiff downplays and questions the selectees' qualifications, she does not proffer—nor does the record contain—any evidence to suggest that the selectees' qualifications, as listed in their applications, are inaccurate.

Thus, there are no genuine issues of material fact regarding the candidates' qualifications. The record reveals that Nagel and Spalding were better qualified than Plaintiff for the AMS positions.

**B.    There is No Genuine Issue of Material Fact Regarding the Procedures Used During the Selection Process**

The facts regarding whether an EEO observer attended the second round of interviews, whether Nagel was interviewed once for two separate positions, whether Spalding formally accepted the offer of employment prior to Plaintiff receiving notice that she was not selected, and whether Spalding was asked to accept one of two positions are *immaterial* in that they are ancillary procedural matters with which Plaintiff attempts to distract the court from her lack of qualifications.[3]

Plaintiff cites *Salazar v. WMATA*, 401 F.3d 504 (D.C. Cir. 2005), to state that an employer must provide a fairly administered selection process in making hiring decisions.

---

[3]    To the extent that the court deems these EEO observer facts as material to the instant case, the Agency emphasizes that Plaintiff's allegations do not allege different facts than those set forth by the Agency. Rather, Plaintiff has a different (inaccurate) interpretation of pertinent Agency regulations, as discussed *infra*. Thus, there remains no genuine issue of material fact.

4

Opposition at 2. However, Plaintiff misconstrues *Salazar's* holding. *Salazar* actually stands for the proposition that where the employer's articulated legitimate nondiscriminatory reason for its selection is that "a fairly administered selection process" yielded a better qualified candidate, evidence of an unfair selection process is evidence of pretext. *Salazar* is inapplicable to the instant case, because the Agency's articulated legitimate nondiscriminatory reason does not hinge on a fairly administered selection process. In the instant case, Defendant's articulated legitimate nondiscriminatory reason is predicated on the two (2) selectees' superior qualifications and Plaintiff's lack thereof.

None of the aforementioned procedural allegations refutes the Agency's legitimate, nondiscriminatory reason (that the selectees were better qualified than Plaintiff) or suggests that Plaintiff was discriminated against due to her sex or race. Moreover, Plaintiff's claims of procedural irregularities are without merit in any event.

**1. The Agency was not required to have an EEO observer present during the second interview panel.**

The absence of an EEO observer during the second round of interviews for the AMS positions is not indicative of discrimination, because 1) Agency regulations did not require that an EEO observer be present and 2) Human Resources personnel advised the selecting official that no EEO observer needed to be present.

The Agency's personnel regulations did not require that an EEO observer attend the second round of interviews. Regulations that were applicable at the time of the interviews in question stated, "A civil rights observer *may* be present at panel interviews." (Docket No. 29, Attachment S- FFAS Handbook, 3-PM, Revision 3, Paragraph 80 A) (emphasis added). The EEO observer's presence was optional.

Defendant asserts that because an EEO observer's presence was optional, the absence of an EEO observer neither violated Agency regulations nor demonstrated discriminatory animus towards any of the candidates, including Plaintiff.

Plaintiff attempts to mislead the court by inaccurately citing Agency regulations that did not apply to the nonsupervisory position selection process at issue. *See* Opposition at 10. Plaintiff states that "all interview panels shall include an EEO representative or member of the CRD/EEO Advisory Council as an observer," citing FSA Notice 2334, Merit Promotion Process, Section 2E, effective October 1, 2002 through October 1, 2003. *See* Opposition at 10. However, Plaintiff fails to state that in the regulation she cites, Section 2E is entitled "Interview Panels for *Supervisory* Positions." (Docket No. 29, Attachment Q – FSA Notice 2334, Merit Promotion Process, Section 2E) (emphasis added). The position for which Plaintiff was interviewed was *nonsupervisory*, as Plaintiff acknowledges in her opposition. Opposition at 10. Thus, no EEO observer was required to attend the interviews at issue.

Furthermore, the selecting official, Doug Frago, acted on the advice of a Human Resources Specialist—in accordance with Agency policy—in not having an EEO observer present during the second round of interviews. (Docket No. 29, Attachment R - Taylor E-mail). Agency regulations in effect at the time stated, "A human resources specialist will be consulted if needed." (Docket No. 29, Attachment S - FFAS Handbook, 3-PM, Revision 3, Paragraph 80). A first round interview panel member consulted a Human Resources Specialist, and the selecting official acted according to the Specialist's advice. (Docket No. 29, Attachment R - Taylor E-mail).

The selecting official, when deciding whether to arrange to have an EEO observer present for the second round of interviews, relied upon a consultation with Human

Resources Specialist Carolyn Taylor, in accordance with Agency policy. (*Id*.; Docket No. 29, Attachment S – FFAS Handbook, 3-PM, Revision 3, Paragraph 80; Attachment J – Frago Affidavit, p. 100). Taylor informed a first round interview panel member, via email, that he did not have to have an EEO observer present.[4] (Docket No. 29, Attachment R – Taylor E-mail). Following the instructions of the Human Resources Specialist, the selecting official did not include an EEO observer in the second round of interviews.

However, even if the regulations could be construed to require the presence of an EEO observer at the second round of interviews,[5] any perceived irregularity regarding the absence of an EEO observer would be attributable to the selecting official heeding the advice of a Human Resources Specialist, *in accordance with Agency policy*. (*See* Docket No. 29, Attachment S - FFAS Handbook, 3-PM, Revision 3, Paragraph 80). The selecting official made the effort to contact Human Resources so that he could ensure that he was following procedure. Thus, the absence of an EEO observer still would not evince discrimination by the Agency.[6]

---

[4] The email from Carolyn Taylor, Human Resources Specialist, to panel member John Chott states, "The EEO representative is required only for 'panel interview' process. If you are doing a second interview, which is usually with the selecting official or representative, you do not need EEO present." (Docket No. 29, Attachment R - Taylor E-mail).
   Furthermore, Carolyn Taylor's affidavit in the ROI states, "…[I]f I had been asked about whether a Civil Rights Observer needed to be present during the second round of interviews, I would have told them they did not need one. This was in accordance with FSA policy at the time of these interviews….[M]y guidance would have been to have an observer in the first round interviews, but that it would not be necessary for the second round of interviews." (Docket No. 29, Attachment L – Taylor Affidavit at p. 69).

[5] The Agency maintains that its regulations did not require the presence of an EEO observer in the second round of interviews, and makes the instant alternative argument for the sake of thoroughly refuting Plaintiff's allegations regarding these immaterial facts.

[6] In his affidavit, the selecting official responds to the question "Who decided what the selection process would entail?" The selecting official responds, "The interview panel decided together what the appropriate process would be, in consultation with Human Resources." (Docket No. 29, Attachment J - Frago Affidavit at p. 99). The selecting official goes on to state, "All along the selection process we consulted with human resources, Carolyn Taylor." *Id*. Thus, *all of Plaintiff's procedural irregularity*

**2. The selectees were not preselected for the positions at issue; however, even if they were preselected, the Agency did not unlawfully discriminate against Plaintiff.**

Plaintiff's allegations regarding whether Nagel was interviewed once for two separate positions, whether Spalding formally accepted the offer of employment prior to Plaintiff receiving notice that she was not selected, and whether Nagel was asked to accept one of two positions can be summarized as a preselection argument. That is, Plaintiff alleges that Nagel and Spalding were preselected for the two AMS positions.

The Agency did not preselect the candidates for the two (2) positions at issue. As a practical matter, the decision to have a second round of interviews indicates that there was no preselection. If the Court takes Plaintiff's allegations into consideration, the selecting official would have had no incentive to elongate the interviewing process because he was empowered to extend offers to any purported preselected candidates after one round of interviews. The record shows that the facts of this case are extremely different, and do not give rise to an inference of discrimination with respect to preselection.

Instead, the selecting official decided that he wanted to get input from the newly appointed supervisor for the vacant positions and make sure that he selected the most qualified candidates. (Docket No. 29, Attachment J - Frago Affidavit, p. 99). Therefore, he decided to take the time to have a second round of interviews with the five highest-ranked candidates. Hence, the record does not support an inference of preselection. The record also refutes of Plaintiff's perceived other procedural irregularities.

<u>Ken Nagel's Selection</u>

Nagel applied for the AMS position as well as another vacant position, that of Program Specialist.[7] Nagel submitted an application for each position. (Attachment Z - Nagel Deposition, p. 28, ln. 14 to p. 29, ln. 1). The positions were similar and Doug Frago was the selecting official for both positions. (Attachment AA - Frago Deposition, p. 14, ln. 3 to p. 17, ln. 20). The first round interview panel was the same for both positions. *Id*. The first round interview questions were almost identical for the two

---

*arguments fail* not only because of the arguments herein, but also because the process itself was determined in consultation with a Human Resources Specialist, in accordance with Agency policy.

[7]   Neither Plaintiff nor Spalding applied for the Program Specialist position.

positions. *Id*. Thus, the selecting official determined that Nagel's single first round interview would be for both positions and the score would apply to both positions (Attachment Z -Nagel Deposition, p. 29, ln. 2 to p. 30, ln. 20).

The record is unclear as to whether Nagel's second round interview was similar for both positions. (*Id*. at p. 34, lns. 16-22; p. 40, ln. 15 to p. 41, ln. 16). However, the record clearly shows that Nagel did receive a score for his second interview; his score is included in the chart with the other Program Specialist candidates' scores.[8] (Attachment Y - Interview Notes and Scores at pp. 485-486).

Furthermore, *Nagel did not get the opportunity to choose between the two positions*; Nagel was never offered the Program Specialist position. (Attachment Z - Nagel Deposition, p. 35, lns. 1-22). Nagel only received an offer for the AMS position. (*Id*. at p. 39, lns. 7-18).[9]

Order of Selection

Agency regulations that applied to the interviews at issue required that the selecting official conduct all interviews, make a selection, and then notify each candidate of the selection. (Attachment BB - FFAS Handbook, 3-PM, Revision 3, Exhibit 8, p. 15).

Plaintiff's second round interview was on July 21, 2003. (Docket No. 29, Attachment I – Fields Affidavit, p. 12). Plaintiff was informed that she was not selected that same day. *Id*. at 13. The Selection Certificate for the Administrative Management positions is dated July 21, 2003 (Attachment X – Position Certifications). Thus, the record reveals that on July 21, 2003, Plaintiff was interviewed; the panel made a final decision, and Plaintiff was informed that she was not selected (Docket No. 29, Attachment I -Fields Affidavit, pp. 12-13; Attachment X – Position Certifications). Plaintiff acknowledges each of these facts in her Opposition, but alleges that these dates suggest procedural impropriety. Opposition at 5-6.

---

[8] Plaintiff asserts that the scoring charts are "void" and "non-official" because the selecting official, at his deposition four years later, could not recall who wrote the charts. Opposition at 12. One of the panel members indicated that Linda Treese created the scoring charts, and the Agency argues that the scoring charts are valid proof that there was no preselection (Docket No. 29, Attachment K - Chott Affidavit, p.92).

[9] Although the selecting official stated at his deposition (four years after the selection) that Nagel had the opportunity to choose between the two positions, he could not recall and was not sure (Attachment AA - Frago Deposition, p. 34, ln. 18 to p. 36, ln. 17). However, the selectee himself recalled clearly that he was not offered the Program Specialist position (*Id.* at p. 35, lns. 1-22).

In fact, there was no procedural impropriety regarding when the selection decisions were made, because the aforementioned dates prove that the selecting official conducted all interviews, made a selection, and then notified the candidates, in accordance with Agency procedure. (Attachment BB – FFAS Handbook, 3-PM, Revision 3, Exhibit 8, p.15). Thus, even the dates that Plaintiff lists in her Opposition are not indicative of preselection.

In her Opposition, Plaintiff states that Linda Cronin was selected for the Program Specialist position, a position other than the one at issue, prior to Plaintiff's final interview. Opposition at 6, 12. However, there is no impropriety in *completing the selection process for a wholly separate position* prior to finishing the interviews for the position at issue, which is the AMS position. Plaintiff makes this irrelevant argument in an effort to confuse or divert the attention of the court.

In that same view, Plaintiff lists the dates on which Spalding received and accepted an offer for the position at issue as well as dates on which office personnel announced the selectees. Opposition at 13. These dates are also irrelevant, because *the selections were properly certified prior to making formal offers*. (Attachment BB – FFAS Handbook, 3-PM, Revision 3, Exhibit 8, p.15). Because the selections were made on July 21, 2003, the offers, acceptances, and announcements would naturally follow. *See id*. There is no procedural impropriety or indicia of preselection in that Spalding accepted the position and office personnel announced the selection on July 22, 2003 (the day after the selections were certified). *Id.*

The dates that Plaintiff uses to allege that there were procedural irregularities and preselection actually support the Agency's facts and reasoning. Plaintiff fails to demonstrate that the aforementioned order of events is indicative of discrimination or pretext.

Alternative Analysis

Notably, even if the court finds that the Agency preselected Nagel and Spalding for the positions at issue, the preselection issue itself is not evidence of unlawful discrimination against Plaintiff. "[P]reselection . . . does not violate Title VII when such preselection is based on qualifications of the party and not on some basis prohibited by

Title VII." *Nyunt v. Tomilson*, 2008 WL 754860 (March 21, 2008 D.D.C.) at * 11 (citing *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986)); *see also, Housley v. Boeing Co.*, 177 F. Supp. 2d 1209, 1217 (D. Kansas 2001) (favoritism based on criteria other than gender does not violate the federal anti-discrimination laws and does not raise an inference of discrimination). Even if a plaintiff can demonstrate favoritism in the selection process, the plaintiff must show that an employer's proffered explanation was pretextual, absent some actual evidence that defendant acted on a motivation to discriminate against plaintiff based on her age, race, or sex. *Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 309-10 (D.D.C. 2005).

Also, the Agency's business decisions with regard to 1) permitting Nagel's interview(s) to apply toward two separate positions and 2) coordinating the timing of the offers, acceptances, and announcements regarding the selections are not the issues presently before the court. *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (stating that Title VII does not authorize a federal court to become "a superpersonnel department that reexamines an entity's business decisions").

## II. THE AGENCY HAD A LEGITIMATE, NONDISCRIMINATORY BUSINESS REASON FOR SELECTING NAGEL AND SPALDING; THE SELECTEES WERE BETTER QUALIFIED FOR THE POSITION THAN PLAINTIFF.

The AMS positions called for general qualifications and specialized experience. Vacancy Announcement (Docket No. 29, Attachment A – Vacancy Announcement). The general qualifications[10] were used to determine which applicants were eligible to interview for the position. *Id*. The specialized qualifications[11] were used to distinguish the (generally qualified) candidates from one another. *Id*.

---

[10] The general qualifications for the AMS position consisted of a time-in-grade requirement (candidates must have served at a GS-13 level), U.S. citizenship, and a timely submitted, complete application. (Docket No. 29, Attachment A - Vacancy Announcement).

[11] The specialized experience for the AMS position is as follows: experience that equipped the applicant with the particular knowledge, skills, and abilities to perform the duties of the position successfully; experience that is typically in or related to the work of the position; experience equivalent to at least one year in the next lower grade level; experience that demonstrates knowledge of administrative management policies and procedures; and experience that demonstrates knowledge in planning, coordinating, and administering agricultural program regulations and practices. *Id*.

Plaintiff met the general qualifications for the AMS position, but she lacked the specialized qualifications necessary to distinguish her as one of the most qualified candidates. As previously stated, *the selectees had decades of administrative, programmatic, management, and agricultural loan experience at the state and/or county office levels as well as at the national level.* See § I.A.1 *supra*. Plaintiff did not.

In her Opposition, Plaintiff—perhaps overly-focused on the position title—assumes that the position at issue requires more *administrative* functions than other functions. Plaintiff, therefore, mistakenly suggests that Nagel's and Spalding's histories of *policy* and *programmatic* experience are impediments to their applications. Opposition at 20.

In fact, the vacancy announcement indicates that the primary functions[12] of the position are developing *policy* and implementing *programs* with respect to state and county offices, neither of which is solely administrative in nature. (Docket No. 29, Attachment A - Vacancy Announcement). Thus, Nagel's and Spalding's specialized, extensive, policy and programmatic experiences in state and county offices actually enhanced their applications and distinguished them from Plaintiff and the other candidates. (Docket No. 29, Attachment J - Frago Affidavit, pp.101-102).

### III.  PLAINTIFF'S ALLEGATIONS OF PRETEXT ARE CONTRADICTED BY THE EVIDENCE IN THE RECORD AND ARE NOT SUPPORTED BY CASELAW

---

[12]  The major duties of the AMS positions are as follows: 1) provide instruction and policy guidance to state and county Farm Services Agency offices regarding budget, workload analysis, reporting, personnel, fiscal management, and administrative services, with respect to administrative and management issues; 2) participate in the development, implementation, and evaluation of policies and programs that pertain to the operation and management of state and county Farm Services Agency offices nationwide; and 3) represent the Deputy Administrator for Field Operations in meetings with top agency and departmental officials on matters relating to state and county office management, operating policies, and overall program delivery. (Docket No. 29, Attachment A -Vacancy Announcment).

In her Opposition, Plaintiff summarily states that "the selection process was rigged to prevent [Plaintiff] from being selected [.]" Opposition at 30. As evidence for her allegation of pretext, Plaintiff offers that "the [Agency] did not follow the normal process…and thus did not follow its own usual, 'normal' procedures [.]" *Id*. at 26.

However, the Agency did adhere to the usual selection process, as the applications, interview scores, and consultations with a Human Resources Specialist shown on the record demonstrate. (Docket No. 29*,* Attachment B - Nagel Application; Attachment C - Spalding Application; attachments M and N – Fields Application; Attachment P - Scores from First Round Interview; Attachment R - Taylor E-mail; Attachment L - Taylor Affidavit; Attachment Y – Interview Notes and Scores).

Even if the AMS position was vacant contemporaneously with other positions in the office, and the fact that Nagel was a candidate for two of the vacant positions led to Plaintiff's perceived procedural irregularities, case law dictates that procedural irregularities within the selection process are not enough to prove discrimination. *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C.Cir. 1982) (holding that an employer's failure to follow its own regulations and procedures alone is not enough to support a finding of discrimination, but is merely a factor in determining pretext).

Plaintiff having offered only alleged procedural irregularities in support of her pretext allegation, and the record being devoid of any evidence of discriminatory animus, Plaintiff has failed to prove that the Agency's legitimate nondiscriminatory reason for selecting Nagel and Spalding is a pretext. *See id*.

## IV.   CONCLUSION

Plaintiff does not refute the material facts listed in Defendant's Motion for Summary Judgment; in her Opposition, Plaintiff merely explains, justifies, and expounds upon the material facts, but she does not dispute them. As such, Plaintiff concedes that the material facts listed in Defendant's Motion are true and accurate.

There being no genuine issues of material fact before the court, the court is equipped to decide the instant case based upon the existing record and grant Defendant's Motion. The record supports Defendant's legitimate, nondiscriminatory business reason for selecting Nagel and Spalding; the selectees' qualifications exceedingly surpass Plaintiff's. (Docket No. 29, Attachment J - Frago Affidavit at pp.101-102).

Plaintiff's allegation that Defendant's legitimate, nondiscriminatory business reason is a pretext fails because it is neither supported by the record nor case law. The record reveals that the Agency adhered to its regulations throughout the interview process. In the alternative, if there were any procedural irregularities in the selection process, they are immaterial and insufficient to demonstrate discriminatory animus. Plaintiff does not present any additional evidence of pretext. Therefore, Defendant's legitimate, nondiscriminatory business reason holds true.

As such, Defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/_____
BLANCHE L. BRUCE, D.C. BAR # 960245
Assistant United States Attorney

Of Counsel:
Dionne Sethna
Brandi A. Cain
U.S. Department of Agriculture