# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEDERIS FIELDS,

                  Plaintiff,

           v.

TOM VILSACK, Secretary, United
States Department of Agriculture,

                Defendant.

Civil Action 06-00538  (HHK)

## MEMORANDUM OPINION

Sederis Fields brings this action against Tom Vilsack, Secretary of the United States
Departure of Agriculture ("USDA" or "agency"), claiming that the agency discriminated against
her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. 2000e *et seq*. ("Title VII").  Presently before the Court is the USDA's motion for
judgment as a matter of law under Federal Rule of Civil Procedure 50 [#60].  Upon consideration
of the motion, Fields' response thereto, and the entire record of the case, the Court concludes that
the motion should be granted.

## I.  BACKGROUND

Since 1999, Fields, who is Black and female, has been employed at the GS-13 level in the
office of Douglas Frago, the Deputy Administrator for Field Operations ("DAFO") in the Farm
Services Agency ("FSA") of the USDA.  In 2003, the USDA posted three GS-14 vacancies: two
Administrative Management Services ("AMS") positions and one Agricultural Program
Specialist ("APS") position.  Fields applied for the AMS positions, as did USDA employees Ken
Nagel and Pat Spalding, who are both White and male.  Nagel also applied for the APS vacancy,
but Fields did not.

The applications for all three positions were sent to Human Resources. Carolyn Taylor, a Human Resources personnel staffing specialist, determined whether each applicant met the minimum qualifications of each position for which he or she applied and developed a "best qualified" list of thirteen applicants based on their answers to questions submitted through a computer program. Taylor then sent the list to Frago, who was the selecting official.

Although Frago was permitted under agency rules to select two applicants from the best qualified list for the AMS positions without holding any interviews, he chose to hold two rounds of interviews for the AMS position. During the first round, each of the applicants on the best qualified list had a panel interview,[1] conducted by Frago; Frago's assistant, John Chott; USDA employee Salomon Ramirez, a Hispanic male; and EEO representative Sean Clayton, a Black male. Fields' first interview was held on July 8, 2003.

The five applicants who earned rankings of "High" as a result of the first interview, including Fields, had a second interview. When Chott asked Taylor if an EEO observer was needed for the second interview, Taylor told him that "[t]he EEO representative is required only for 'panel interview' process. If you are doing a second interview, which is usually with the selecting official or representative, you do not need EEO present." Joint Exhibit ("JX") 22 (7/11/03 Email from Taylor to Chott). Fields' second interview was conducted by Frago, Chott, and Linda Treese, a new employee who would be supervising the employees selected for the AMS positions. No EEO representative was present for Field's second interview. On the same

---

[1] Under agency rules, panel interviews are required only for supervisory positions, but, whenever held, must meet certain conditions. One of these conditions is that an Equal Employment Opportunity representative must observe the interview. *See infra* section III.A.3.

day as her second interview, Fields learned that she had not been selected for either AMS position. Chott announced the next day that Frago had selected Nagel and Spalding for the AMS vacancies.

Fields alleges that she was not selected for the AMS position due to unlawful discrimination on the basis of her race and gender. The USDA moved for summary judgment, contending that Nagel and Spalding were selected instead of Fields because they were more qualified. The Court denied the USDA's motion for summary judgment, concluding that there was "enough evidence to raise a genuine issue of material fact as to whether the USDA's explanation [for not selecting Fields] is pretextual." *Fields v. Johanns*, 574 F. Supp. 2d 159, 161 (D.D.C. 2008). The Court found "no evidence that Fields was significantly more qualified than Nagel and Spalding for the AMS position," and "substantial evidence that shows that Nagel and Spalding were just as qualified for the position — and perhaps even more qualified — as Fields." *Id*. at 163. However, the Court held that a factual dispute existed as to whether Nagel was preselected, and as to which set of regulations regarding interview procedures applied at the time of Fields' application. *Id.* at 164. Because preselection and the failure of an agency to follow its own procedures could be evidence of pretext, the Court held that it could not grant summary judgment for the USDA. *Id*.

A jury trial was held. At the close of all the evidence, the USDA moved under Federal Rule of Civil Procedure 50 for judgment as a matter of law, which the Court took under advisement. When the jury was unable to reach a unanimous verdict, the Court declared a mistrial. Presently before the Court is the USDA's renewed motion for judgment as a matter of law.

## II. LEGAL STANDARDS

### A. Judgment as a Matter of Law Under Federal Rule of Civil Procedure Rule 50(a)

Under Federal Rule of Civil Procedure 50(a), a court may render judgment as a matter of law after a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). When deciding a Rule 50 motion, "the court should review all of the evidence in the record."[2] *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* "Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *McGill v. Munoz*, 203 F.3d 843, 845 (D.C. Cir. 2000) (internal quotation omitted).

### B. Title VII

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms,

---

[2] With its Rule 50 motion, defendant filed a statement of material facts not in genuine dispute. Plaintiff submitted a response, which defendant then moved to strike [#69] on the ground that it violates Local Civil Rules 7(h) and 56.1 because Fields' response contains argument even as to facts Fields admits, her dispute of some facts is contrary to the trial testimony, and other disputes are not supported by citations to the record. The Court finds that it would not be appropriate to strike plaintiff's response to defendant's statement of material facts. *See Hickey v. Scott*, 738 F. Supp. 2d 55, 63 (D.D.C. 2010) ("'A motion to strike is considered an exceptional remedy and is generally disfavored, and the proponent of such motion must shoulder a formidable burden.'") (quoting *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53 (D.D.C. 2006)). Instead, the Court will grant defendant's alternative request to accept its motion to strike as a reply to Fields' opposition to its statement of material facts.

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, courts analyze Title VII discrimination claims under the procedural framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). Under this framework, a plaintiff must first establish a prima facie case of discrimination; the defendant must then offer a legitimate non-discriminatory reason for its actions; if the defendant does so, the plaintiff bears the burden of establishing that the asserted reason is a pretext for unlawful discrimination. *Id.*

In the context of a motion for judgment as a matter of law, the Court will grant the USDA's motion if the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find that the USDA's asserted non-discriminatory reason was not the actual reason for Fields' non-selection and that the agency intentionally discriminated against Fields on a prohibited basis.

## III. ANALYSIS

The USDA argues that it is entitled to judgment as a matter of law because the evidence presented at trial fails to establish that Fields was not selected for the AMS position on the basis of her race or sex. The USDA contends that the evidence fails to refute its legitimate, non-discriminatory reason for not selecting Fields, specifically that she was less qualified than the selectees and did not perform as well during the interview process. Fields asserts that the USDA's proffered reason is pretextual and that discrimination is the actual reason for her non-selection. For the reasons explained below, the Court concludes that the USDA's arguments have merit and finds that it is entitled to judgment as a matter of law.

**A.     There Is Insufficient Evidence That the USDA's Proffered Reason for Not Selecting Fields Was Pretextual.**

Fields contends that because the evidence shows that (1) she was more qualified for the position than Nagel and Spalding, (2) Nagel was preselected, and (3) the USDA violated its own regulations governing interviewing procedures, a reasonable jury could conclude that the USDA's proffered reasons for failing to promote plaintiff were false and that intentional race and gender discrimination were the real reason. The USDA maintains that these claims are not supported by the record. The Court agrees with the USDA and addresses each allegation in turn.

**1.     The evidence did not establish that Fields was significantly more qualified than the selectees.**

Defendant's proffered explanation for not selecting Fields is that she was not the most qualified candidate for the AMS position, which required candidates with a broad range of administrative skills to provide "instruction and policy guidance to State and county FSA offices related to administrative and management issues" like "budget, workload analysis and reporting, personnel, fiscal management," JX 1 (AMS Vacancy Announcement) at 2, nor did she perform as well as the selectees during the interview process. Plaintiff takes issue with the claim that she had less administrative experience than Nagel and Spalding, noting that she had been employed at the GS-13 level longer than them.

It is well-settled in the D.C. Circuit that a "plaintiff can show her employer discriminated by showing that she was 'significantly' or 'markedly' more qualified for the job than was the candidate who actually received it." *Hendricks v. Geithner,* 568 F.3d 1008, 1012 (D.C. Cir. 2009) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1091-92 (D.C. Cir. 2003)). A jury can infer discrimination based on such a showing, but "[w]ithout such a decisive showing," the court

"rightfully defer[s] to the business judgment of an employer and ha[s] no cause to infer

discrimination." *Id.*; *see also Adeyemi v. District of Columbia,* 525 F.3d 1222, 1227-28 (D.C.

Cir. 2008). As the D.C. Circuit has instructed:

> The qualifications gap must be "great enough to be inherently indicative of
> discrimination." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal
> quotation marks omitted). Only then could the fact-finder "legitimately infer that the
> employer consciously selected a less-qualified candidate-something that employers do not
> usually do, unless some other strong consideration, such as discrimination, enters into the
> picture." *Id.* (internal quotation marks omitted). In cases where the comparative
> qualifications are close, a reasonable jury would not usually find discrimination because
> the jury would "assume that the employer is more capable of assessing the significance of
> small differences in the qualifications of the candidates, or that the employer simply made
> a judgment call." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)
> (en banc); *see also Jackson*, 496 F.3d at 707. We must "respect the employer's unfettered
> discretion to choose among qualified candidates." *Fischbach v. D.C. Dep't of Corr.*, 86
> F.3d 1180, 1183 (D.C. Cir. 1996). To conclude otherwise, we have said, "would be to
> render the judiciary a super-personnel department that reexamines an entity's business
> decisions-a role we have repeatedly disclaimed." *Jackson*, 496 F.3d at 707 (internal
> quotation marks omitted).

*Adeyemi*, 525 F.3d at 1227.

As an initial matter, the Court finds no basis for a reasonable jury to find that the USDA's

asserted non-discriminatory reason is false insofar as it relies on Fields' qualifications compared

to the selectees'. As the Court previously found, "[t]here is substantial evidence that shows that

Nagel and Spalding were just as qualified for the position — and perhaps even more qualified —

as Fields. Both had a broader range of experience than Fields." *Fields*, 574 F. Supp. 2d at 163.

The Court's holding was supported by the evidence presented at trial, which showed that

Fields did not have a broad range of administrative experience. Unlike Nagel and Spalding,

Fields had never worked in a state or county FSA office. Fields' experience was also focused in

the area of Equal Employment Opportunity, which was not among the major duties of the AMS

position, and she did not establish that she had experience in the major duties of budget, workload analysis and reporting, or fiscal management — much less that she was significantly or markedly more qualified than Nagel and Spalding in these areas. The fact that Fields was employed at the GS-13 level for longer than Nagel and Spalding is inapposite given that her responsibilities during that time were not relevant to the duties of the AMS position, while those performed by Nagel and Spalding were. *See Francis v. District of Columbia,* 731 F. Supp. 2d 56, 79 (D.D.C. 2010) ("As this Circuit has explained, the applicants' relative grade levels at the time of the application are irrelevant, for 'it says little about the level of relative . . . qualifications to serve.'") (quoting *Barnette v. Chertoff*, 453 F.3d 513, 517 (D.C. Cir. 2006)).

Indeed, Fields admits that she, Nagel, and Spalding all "had solid administrative and interpersonal experience" and "had extensive 'in the field' experience." Plaintiff's Opposition to Defendant's Motion [#65] ("Pl's Opp'n") at 19. Fields also concedes that her job focus was in the area of Equal Employment Opportunity and that she "may have had a lack of complete knowledge" of some of the position's major duties, but argues that Nagel and Spalding did as well. *Id.* at 20. In sum, Fields has failed to demonstrate that she was "significantly" or "markedly" more qualified than Nagel and Spalding. *See, e.g., Porter v. Shah*, 606 F.3d 809, 815-816 (D.C. Cir. 2010) (finding that plaintiff "plainly lacked the 'stark superiority of credentials' over [the selectee] that can give rise to an inference of pretext") (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003)); *Francis,* 731 F. Supp. 2d at 74 ("Construing the record in the light most favorable to [plaintiff], no reasonable jury could find [the selectee] unqualified for the position of Protective Services Manager, nor could it find [plaintiff] significantly better qualified."); *see also Adeyemi,* 525 F.3d at 1227-28 (finding that a

8

comparison of plaintiff's and the selectees' relative qualifications failed to raise an inference of discrimination, and indeed the evidence of the selectee's "superior qualifications tends to undermine any suggestion of discrimination").

In addition, there is evidence that Fields did not perform well during her second interview. While Fields admits that she was nervous during her second interview, she contends that given Frago's knowledge of her application and first round interview, the number of years of experience she had at the GS-13 level, and the confidence she showed on the job, Frago's assessment of her alleged nervousness was "disingenuous." Pl.'s Opp'n at 21. She suggests that he should have "inquire[d] further into Plaintiff's nervousness or mitigate[d] it in his own mind," particularly if "he was sensitive to the issues of 'diversity'" and realized that the second round interview was conducted by interviewers who were White while she was being assessed against other candidates who were White. *Id.* Fields also argues that Frago's perception of her performance contrasts with Treese's, who testified that Fields "did a good job." 2/26/09 Transcript II at 7. Pointing to Treese's scores for each of Fields' questions, Fields suggests that Treese lowered her ratings to make the difference between Fields' scores and the selectees' even greater, and suggests that Treese might have changed the scores at Frago's behest.

The Court finds no merit in Fields' argument regarding her second interview. Fields does not dispute that she was nervous; she merely tries to explain that her nervousness was based on the composition of the group that interviewed her and suggests that Frago should have discounted her nervousness due to her race. Moreover, this argument is contrary to her testimony at trial, during which she said she did not believe she was nervous during the second round. 2/24/09 Transcript ("Tr.") I at 41. The Court also rejects the allegation that Treese changed

Fields' scores to make it appear that she performed worse than she did. Treese testified, without contradiction, that although she lowered the score for one question from "3" to "2," she also raised the score for another from "2" to "3." 2/26/09 Tr. II at 16-17; *see also* JX 18 (Interview Sheet for Sederis Fields) at 1; JX 19 (Second Interview Score Tally Sheet). As a result, Treese's overall score for Fields' interview remained the same at 8.5. *See* JX 18; JX 19.

Because Fields has not demonstrated that she was significantly or markedly more qualified for the AMS position than the selectees, the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find that the USDA's explanation was false.

### 2. The evidence did not establish that Nagel was preselected for the position.

Fields further contends that the USDA's reason is pretextual because Frago preselected Nagel for the AMS position and predetermined that Fields would not be selected for the position. In support of this claim, Fields alleges that Nagel was offered his choice between the AMS and APS positions; highlights that the selection for the APS position for which Nagel applied was made before Fields' second interview; and notes that Fields was informed that she was not selected for the AMS position on the same day as her second interview — a day before Spalding, the other selectee, accepted his offer. The USDA responds that Fields' allegations are not supported by the evidence. The Court agrees.

The evidence shows that Nagel applied and was interviewed for both the AMS and APS positions and was never offered a choice between the two positions. During Frago's deposition, he stated that Nagel would be offered the choice, but at trial he testified that he did not recall doing so, 2/24/29 Tr. II at 20, and, most significantly, Nagel testified that he was never offered the choice, 2/26/09 Tr. II at 30, 34-35. Although the selectee for the APS position — for which

Nagel applied but Fields did not — was announced prior to Fields' second interview, there is no evidence that Nagel was offered the AMS position before Fields' second interview. While Fields highlights that Frago changed his testimony regarding whether he made the decisions as to all three positions at the same time or until after Plaintiff's interview, there is no dispute that no offers for the AMS positions were made until after Fields' second interview. The fact that Fields was informed that she was not selected even before Spalding accepted does not necessarily show that her non-selection was predetermined, as both Spalding and Bruce Peters appear to have received higher total scores for the second interview than Fields. *See* JX 19. Fields' preselection argument is further undermined by the fact that Frago was permitted to fill the AMS positions solely from the "best qualified" list prepared by Taylor, yet chose to evaluate the selectees in two rounds of interviews along with all of the other candidates.

Preselection is "'undeniably relevant to the question of discriminatory intent' and may allow a factfinder to reasonably reject the employer's asserted non-discriminatory justification," *Smith v. Napolitano*, 626 F. Supp. 2d 81, 97 (D.D.C. 2009) (quoting *Krodel v. Young*, 748 F.2d 701, 709 (D.C. Cir. 1984)), but "'[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII.'" *Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 310 (D.D.C. 2005) (quoting *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986)). As the Court has held, Nagel was at least as qualified for the position as Fields and had a broader range of experience. *Fields*, 574 F. Supp. 2d at 163. In light of the record, Fields' claim of preselection fails to raise any inference of pretext. *See, e.g., Gonzales v. Holder*, 656 F. Supp. 2d 141, 148 (D.D.C. 2009) (rejecting plaintiff's attempt to show pretext on the basis of preselection where plaintiff "adduced no

evidence tending to show that, even if [selecting official] did preselect [selectee], she did so out of an intent to retaliate, rather than a desire to hire the most qualified candidate").

### 3. The evidence did not establish that the USDA violated its own regulations.

Fields argues that Frago chose to conduct a second interview because he was not pleased that she was rated "High" after her first round interview and wanted to conduct a second interview to disadvantage her. By holding a panel interview in the second round without an EEO observer, Fields contends that the USDA violated the regulations by failing to include an EEO observer and intentionally put her at a disadvantage "by excluding the voice of racial diversity on the panel where it had been present on the first panel." Pl.'s Opp'n at 25. Defendant responds that Frago decided to conduct a second round to allow Linda Treese to participate because Treese would be supervising the selectees, that Human Resources advised Chott that no EEO observer was required because the second round was not a "panel interview," and that, even if it were a panel, the second round interviewers were not in fact less diverse than those in the first round. The Court finds that the USDA did not violate interview procedures, but that, even if did, any violation was not motivated by an unlawful intent to discriminate.

Plaintiff asserts that Taylor's advice that no EEO observer was needed for the second interview was misinformed because, at the time she sent the email informing Chott that no EEO observer was needed for the second round interview, she did not know how many interviewers would be present. Taylor testified, however, that when responding to Chott, the number of people who would conduct the interview was of no importance to her. 2/26/09 Tr. III at 68. According to Taylor, there is no requirement as to what has to happen during the second round of interviews after a first round panel interview, including no requirement that an EEO observer be

12

present during the second round of interviews. *Id.* at 66-67. This is so, because according to Taylor's testimony, a second interview is under no circumstances a "panel interview." *Id.* at 72. She advised Chott, and Chott and Frago reasonably relied on her advice. Where "the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady v. Officer of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The Court finds that the USDA's stated belief is reasonable given that the function of a "panel interview" is to rank the applicants into grounds of high, medium, and low so that the selecting official can use that ranking to decide whom to interview during the second round. Essentially, because the purpose of the second interview is to allow the selecting official to determine the ultimate selectee for the job, the ranking function of a panel interview is not useful.

In addition, the parties agree that the regulations pertaining to interview procedures that applied at the time of Fields' application are contained in Notice PM-2334.[3] JX 27 ("Merit Promotion Process"). The parties also agree that the AMS position was a non-supervisory position, and that a panel interview was therefore not required. It is also undisputed that Notice PM-2334 does not contain any provision prohibiting a second round interview nor any provision under which Fields' second round interview was a "panel interview" simply because it was conducted by three people. Fields did not present any evidence to the contrary. Indeed, Fields' witness, Edith Stovall, could not point to anything in the applicable regulation that an interview conducted by three people constitutes a panel interview triggering the requirement of an EEO

---

[3] Fields' copy of Notice PM-2334 is labeled as Joint Exhibit 26 in the exhibits to her opposition.

observer. 2/25/09 Tr. at 31. As a result, Fields is unable to establish that the agency violated its own regulations by holding a second interview and having it conducted by three people and no EEO observer.

Nonetheless, even if the second round interview violated the regulations by failing to include an EEO observer, there is no evidence that the interview procedure was motivated by discriminatory intent or resulted in discriminatory treatment. *See, e.g., Oliver-Simon*, 384 F. Supp. 2d at 312-13 ("'Even if a court suspects that a job applicant was victimized by poor selection procedures it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'") (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal quotation marks and alterations omitted)); *Ross v. Runyon*, 859 F. Supp. 15, 20-21 (D.D.C. 1994) (finding "no evidence in the record that the appointment of a three-member Review Committee, especially one with two African/American members, benefitted the other applicants and harmed the Plaintiff in some way that would not have happened if a sole Selecting Official had made the decision").

The Court finds no evidence in the record to support Fields' arguments that the second round interview was designed to disadvantage her. First, because the second interview was not required by agency regulations, Frago could have simply selected Nagel and Spalding after the first interview. Even if Frago did not intend to select Fields, convening a second interview to "disadvantage" Fields was unnecessary. Second, Frago had no way of knowing or predicting that Fields would not perform as well during the second interview as she did during the first. Third, Fields' complaints about the second interview group being less diverse than the first and therefore putting her at a "psychological disadvantage to her [White] competitors," Pl's Opp'n at

21, are misguided. While the second round interviewers — Frago, Chott, and Treese — were all White, the first round interviewers — Frago, Chott, Ramirez — and the EEO observer, Sean Clayton, were all male. Although the second round was not racially diverse, it included a female while the first did not. Notice PM-2334 contains no requirement that a panel be diverse in both race and gender. *See* JX 27 at 5-6 ("Interview panels shall: . . . be diverse . . . .").

Accordingly, the evidence does not support the conclusion that the USDA discriminated against her by holding a second interview with three White interviewers. *See Reeves v. Sanderson Plumbing Prods*., 530 U.S. at 147 (stating that "'[i]t is not enough . . . to *disbelieve* the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the USDA's motion for judgment as a matter of law should be granted [#60] and its motion to strike Fields' response to its statement of material facts not in dispute [#69] should be denied. A judgment accompanies this memorandum opinion.

July 19, 2011                                    Henry H. Kennedy, Jr.
                                                United States District Judge