**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SEDERIS FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06-cv-0538 (RCL) |
| | ) | |
| TOM VILSACK, | ) | |
| Secretary, U.S. Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Sederis Fields brings this action against Tom Vilsack, Secretary of the United States Department of Agriculture ("USDA" or "agency"), claiming that the agency discriminated against her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"). Presently before the Court is the plaintiff's *pro se*[1] motion [82] to alter or amend the judgment [81]. Upon consideration of the filings, the entire record herein and the relevant law, the Court DENIES the plaintiff's motion.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff, who is a Black female, has been employed at the GS-13 level in the office of Douglas Frago, the Deputy Administrator for Field Operations in the Farm Services Agency of the USDA since 1999. In 2003, the USDA posted two GS-14 vacancies for positions in Administrative Management Services ("AMS"). Fields applied for the AMS positions, as did

---

[1] Plaintiff was previously represented by counsel, however, the Court notes that this particular motion is filed *pro se*.

USDA employees Ken Nagel and Pat Spalding, who are both White males.  Nagel also applied for the APS vacancy, but Fields did not.

After the human resources department determined whether each applicant met the minimum qualifications, the department sent Frago a list of the "best qualified" applicants based on their answers submitted through a computer program.  The plaintiff was included in this list. Under agency rules, Frago was permitted to select two applicants from the best qualified list for the AMS positions without holding any interviews.  He chose, however, to hold two rounds of interviews for the AMS positions.  During the first round, a panel interview[2] questioned each applicant on the best qualified list.  This panel consisted of Frago; Frago's assistant, John Chott, USDA employee Salomon Ramirez, a Hispanic male; and Equal Employment Opportunity ("EEO") representative Sean Clayton, a Black male.  Fields' first interview was held on July 8, 2003.

The five applicants, including Fields, who earned a "High" ranking after the first round interviews were offered a second interview.  Prior to conducting the second round interview, Chott asked Carolyn Taylor, a human resources personnel staffing specialist, whether an EEO observer was needed for the second round interview.  Taylor informed him that "[t]he EEO representative is only required for the 'panel interview' process.  If you are doing a second interview, which is usually with the selecting official or representative, you do not need an EEO present."  Mem. Op. at 2, July 19, 2011; Joint Exhibit ("JX") 22 (7/11/03 Email from Taylor to Chott).  Frago, Chott, and Linda Treese, a new employee who would be supervising the employees selected for the AMS positions, conducted Fields' second interview.  No EEO representative was present for this interview.

---

[2] Under agency rules, panel interviews are required only for supervisory positions, but, whenever held, must meet certain conditions.  One of these conditions is that an EEO representative must observe the interview.

On the same day as her second interview, Fields learned she had not been selected for the AMS position.  The next day, Chott announced that Frago selected Nagel and Spalding for the two AMS vacancies.

### B.     Procedural Background

Fields filed a complaint on March 22, 2006 alleging that she was not selected for the AMS position due to unlawful discrimination on the basis of her race and gender.  The USDA moved for summary judgment, contending that Nagel and Spalding were selected instead of Fields because they were more qualified.  The Court (per Judge Kennedy) denied the USDA's motion for summary judgment, concluding that there was "enough evidence to raise a genuine issue of material fact as to whether the USDA's explanation [for not selecting Fields] is pretextual."  Mem. Op. at 2, Sept. 5, 2008.  The Court found "no evidence that Fields was significantly more qualified than Nagel and Spalding for the AMS position," and "substantial evidence shows that Nagel and Spalding were just as qualified—and perhaps even more qualified—as Fields."  *Id.* at 6.  However, the Court held that a factual dispute existed as to whether Nagel was preselected, and as to which set of regulations regarding interview procedures applied at the time of Fields' application.  *Id.* at 7.  Because preselection and the failure of an agency to follow its own procedures *could* be evidence of pretext, the Court held that it could not grant summary judgment for the USDA.  *Id.*

A jury trial was held, and at the close of all the evidence, the USDA moved for a Federal Rule of Civil Procedure 50 judgment as a matter of law, which the Court took under advisement. Because the jury was unable to reach a unanimous verdict, the Court declared a mistrial.

The USDA subsequently renewed their motion for judgment as a matter of law, which the Court (per Judge Kennedy) granted.  In so doing, the Court held that there was insufficient

evidence presented at trial that the USDA's proffered reason for not selecting Fields was pretextual.  Mem. Op. at 6, July 19, 2011.  The Court also held that the evidence presented did not establish that Fields was significantly more qualified than the selectees or that the USDA violated its own regulations in the interview process.

Presently before the Court is the plaintiff's *pro se* motion to alter or amend the July 19, 2011 judgment.

## III.   ANALYSIS

### A.   Legal Standard

Rule 59(e) allows a district court to correct its own mistakes in the period immediately following the entry of an order.  *White v. N.H. Dep't of Emp't Sec.,* 455 U.S. 445, 450 (1982).  Though a court has considerable discretion in granting Rule 59(e) motions, it only needs to do so when it finds that there has been an intervening change of controlling law, that new evidence is available, or that granting the motion is necessary to correct a clear error or to prevent a manifest injustice.  *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  Moreover, "[a] Rule 59(e) motion to reconsider is [neither] . . . an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States,* 880 F. Supp. 37, 38 (D.D.C. 1995), nor a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. District of Columbia,* 995 F.2d 274, 276 (D.C. Cir. 1993).  And Rule 59(e) motions are generally granted only in extraordinary circumstances.  *Liberty Prop. Trust v. Republic Props. Corp.,* 570 F. Supp. 2d 95, 97 (D.D.C. 2008) (citing *Niedermeier v. Office of Max S. Baucus,* 153 F. Supp. 2d 23, 28 (D.D.C. 2001)).

### B.   Title VII

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  In the absence of direct evidence of discrimination, courts analyze Title VII discrimination claims under the procedural framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973).  *See Holcomb v. Powell,* 433 F.3d 889, 901 (D.C. Cir. 2006).  Under this framework, a plaintiff must first establish a prima facie case of discrimination; the defendant must then offer a legitimate nondiscriminatory reason for its actions; if the defendant does so, the plaintiff bears the burden of establishing that the asserted reason is a pretext for unlawful discrimination.  *Id.*

### C.    The Court Denies the Plaintiff's Motion to Alter or Amend Judgment

The plaintiff first argues that the Court failed to hold a hearing prior to ruling on the USDA's motion for judgment as a matter of law.  Pl.'s Mot. at 1-2.  The Court is unaware of, and the plaintiff does not cite to, any rule that requires the Court to hold a hearing prior to ruling on a Rule 50 motion.  Further, the plaintiff fails to identify why this failure to hold a hearing affects the validity of the judgment rendered.

The plaintiff next argues that the failure to have an EEO representative present at Fields' second interview violated the USDA's regulation that all panel interviews must have a representative present.  *Id.*  at 2.  The plaintiff further argues that she was equally qualified for the position as the selectees, and the second round interview was "rigged to prevent her from being selected."  *Id.*  at 3.  The defendant argues in response, and the Court agrees, that these assertions are merely a rehashing of arguments already decided by the Court.  Def.'s Opp'n at 3.

Specifically, the Court previously held that Taylor's testimony at trial set forth that a second round interview was not a "panel interview," and even if it was, there was no evidence that the interview procedure "was motivated by discriminatory intent or resulted in discriminatory treatment." Mem. Op. at 14, July 19, 2011.   Indeed, the plaintiff concedes in her motion that, "[w]e are unable to see intent." Pl.'s Mot. at 2.  Further, the plaintiff provides no evidence in her motion supporting the theory that the selection process was rigged.  The Court previously held that there was "no evidence in the record to support Fields' argument that the second round interview was designed to disadvantage her." *Id.*  For these reasons and because the plaintiff identifies no change in controlling law and presents no new evidence, the Court DENIES the plaintiff's motion to alter or amend the previous judgment.

## V.   CONCLUSION

For the foregoing reasons, the Court DENIES the plaintiff's motion [82] to alter or amend the judgment.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on January 30, 2012.